In re Juan Angel GUERRA, District and County Attorney for Willacy County, State of Texas.

No. 13–07–165–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Sept. 21, 2007.

Rehearing Overruled Oct. 16, 2007.

---

Juan Angel Guerra, Willacy County District and County Attorney, Raymondville, pro se.

Gilberto Hinojosa, Magallanes & Hinojosa, Brownsville, for Juan Angel Guerra.

E. Paxton Warner and Yolanda De Leon, Harlingen, for Judge Migdalia Lopez.

Mervyn M. Mosbacker, Houston, for Judge Gustavo "Gus" Garza.

Sheriff Larry Spence, Raymondville, pro se.

Alberto Garcia, Harlingen, for real party in interest.

Gilbert Lozano, District Clerk, Raymondville, pro se.

John T. Blaylock, Harlingen, for real party in interest.

Ruben Cavazos, County Treasurer, Raymondville, pro se.

David W. Hartmann, Harlingen, for real party in interest.

Lawrence A. Walsh, Brownsville, for Grand Jury.

Terry Flores, County Clerk, Raymondville, pro se.

Willacy County Bail Bond Board, pro se.

Before Justices YAÑEZ, BENAVIDES, and VELA.

## OPINION

Opinion by Justice YAÑEZ.

This is an original application for writ of mandamus by which the District Attorney of Willacy County, as relator, seeks to have an order entered by respondent trial judge set aside. Relator, Juan Angel Guerra, alleges respondent, Judge Migdalia Lopez of the 197th District Court of Cameron County, exceeded her authority as a magistrate by entering an order appointing Gustavo Garza as attorney pro tem. The parties have filed motions for contempt and sanctions. We conditionally grant the writ and deny the motions for contempt and sanctions.

## I. BACKGROUND

On January 11, 2007, the 197th Judicial District Grand Jury for Willacy County, July Term, asked to meet with respondent, Judge Lopez.[1] In that private meeting, the grand jury expressed concerns that relator had abused his office in several respects and requested that an attorney pro tem be appointed to assist in the grand jury's investigation of those concerns. In response to that request, respondent issued an order on January 17, appointing Gustavo Garza as attorney pro tem. Respondent had previously appointed Garza as attorney pro tem on August 2, 2006, after respondent approved relator's request to be recused in the investigation of *State of Texas v. Eliseo Barnhart* and *State of Texas v. Andrea Espinosa*, two cases pending in the Willacy County District Attorney's Office. The January 17 order, which was drafted by Garza after reviewing the reporter's record of the

meeting between the grand jury and respondent, provides as follows:

On January 11, 2007, in Willacy County, Texas, the Grand Jury for the 197th District Court, whose term was extended met in open court with District Judge Migdalia Lopez. On the record the Willacy County Grand Jury addressed various concerns regarding the District Attorney, Juan Angel Guerra and his conduct as District Attorney.

### I.

The Grand Jury expressed concern that the District Attorney, Juan A. Guerra was abusing his office and abusing his power.

### II.

The Grand Jury was concerned with the request by the District Attorney to investigate and indict several Willacy County elected officials.

### III.

The District Attorney requested the Grand Jury to subpoena the District Judge.

### IV.

District Attorney, Juan A. Guerra requested indictments from this Grand Jury without presenting any evidence.

### V.

The District Attorney ordered the Grand Jury to create a five member committee and the District Attorney named two of the committee members. This Grand Jury committee was to in-

---

1. The July Term grand jury was a "holdover" grand jury. *See* TEX.CODE CRIM. PROC. ANN. art. 19.07 (Vernon 2005).

vestigate and recommend indictment for neglect of office against the District Clerk, County Clerk, County Sheriff and other bail bond board members. This matter was a civil matter.

## VI.

The District Attorney demanded $10,000.00 from a bail bond company. The Grand Jury suspected that a person was indicted for a sex offense in retaliation for nonpayment of the $10,000.00 demanded.

## VII.

The District Attorney requested the Grand Jury to 'true bill' a case that the Grand Jury was in favor of a 'no bill' by stating that the suspect was going to be arrested anyway.

## VIII.

The Grand Jury expressed concern that the District Attorney, Juan Angel Guerra uses the grand jury process to intimidate individuals or get even.

## IX.

The Grand Jury was aware of voter fraud committed by the District Attorney, Juan Angel Guerra during the election of March 2004.

Because of these concerns, the Grand Jury requested the 197th District Court meet with the Grand Jury and requested that a special prosecutor be appointed to assist and guide the Grand Jury in investigating the aforementioned areas of concern and any other wrong doing in-

volving the Willacy County District Attorney, Juan Angel Guerra.

### Order

Pursuant to the request by the Willacy County Grand Jury, on this the *11th* day of *January,* 2007, IT IS THE ORDER OF THE COURT that *Gustavo Garza* is appointed attorney Pro Tem otherwise known as Special Prosecutor to investigate and prosecute these matters referenced above and any other criminal activity connected or arising out of these allegations; the Attorney Pro Tem will be able to obtain assistance of co-counsel. Considering the fact that the Court has appointed Gustavo Ch. Garza as attorney pro tem on August 2, 2006, this Court by this Order is extending the assignment of August 2, 2006, and the Oath of Office filed with the County Clerk shall continue in full force and effect until the completion of these matters.

On February 10, Daniel Cavazos, Jr., a special investigator with the Raymondville Police Department, alleged in an affidavit that he had probable cause to believe that relator had committed certain criminal acts. In his affidavit, Cavazos requested a search warrant to investigate those acts. Garza then presented the affidavit to Judge Janet L. Leal of the 103rd District Court of Cameron County, whereupon Judge Leal issued the warrant, authorizing the search and seizure of various items within the Willacy County District Attorney's Office.[2]

On February 11, Cavazos drafted an "affidavit for warrant of arrest" under

---

**2.** The warrant permitted the search and seizure of "all the computers, hard drives, flash drives, floppy discs, and any other computer device that will store information electronically." It further allowed for the seizure of "all financial records, all receipt books and any and all record books of seized property and records of expenditures of forfeited funds, including files, tapes, videos, recordings kept and contained within the Willacy County District Attorney's Office."

Garza's supervision, which led to the issuance of three arrest warrants against relator. The warrants accused relator of two counts of theft by public servant and one count of attempted theft by public servant.[3] Later that day, police officers with the Raymondville Police Department, acting under Garza's direction, executed a search of the district attorney's office and seized a number of items. Relator was also arrested in the process for interfering with the search. On February 23, the complaints against relator—three felony counts of theft by public servant and the later added charge of interfering with public duties—were dismissed by Raymondville Municipal Judge Hector Huerta.

On March 14, relator filed with this Court a "Petition for Writ of Injunction (Temporary Restraining Order)"[4] and "Motion for Stay of Execution of Order" of the 197th District Court. This Court granted relator's stay motion on March 15,[5] ordering the trial court's order of January 17 stayed and setting the matter for oral argument on April 4.

On March 21, the aforementioned grand jury met and issued a subpoena directed to Garza; the subpoena requested the draft indictments against relator that Garza had previously prepared. Garza provided the grand jury with those indictments and the grand jury issued the indictments that same day. As a result, relator was once again arrested.[6]

On March 22, relator filed a motion for contempt, contending that respondent and Garza had violated this Court's stay order. Respondent and Garza individually filed a motion to dismiss relator's motion for contempt, and subject thereto, a response and counter-motion for sanctions. Accordingly, this Court issued an order setting the motion for an evidentiary hearing. Respondent and Garza were ordered to appear before this Court on April 4 to respond to relator's motion and show cause why they should not be held in contempt of court and punished for their alleged failure to comply with this Court's March 15 order.[7]

On March 31, while a decision on relator's petition was pending before this Court, relator's motion to recuse respondent in the pending criminal matters against relator was granted by Judge J. Manuel Bañales, the presiding judge of the Fifth Administrative Judicial Region. In connection with that recusal, Judge Ba-

3. *See* Tex. Penal Code Ann. § 31.03 (Vernon Supp.2006).

4. Despite the petition's title, relator's petition does not argue or pray for a writ of injunction. Instead, relator prays for the same general relief that he later sets out in his amended petition, which is outlined below and construed by this Court as a writ of mandamus. *See In re Estate of Head,* 165 S.W.3d 897, 902 (Tex.App.-Texarkana 2005, no pet.) *(holding that courts "are to construe a party's pleadings liberally rather than limit the function of those pleadings according to the mere titles they are given").*

5. *See* Tex.R.App. P. 52.10.

6. Relator was indicted for the following offenses: first degree felony theft, attempted theft, tampering with governmental records, perjury, and abuse of official capacity. *See* Tex. Penal Code Ann. §§ 15.01(a), 31.03(e)(7), 31.03(e)(4), 37.02, 37.10, 39.02 (Vernon 2003 & Supp.2006).

7. We notified respondent and Garza that they had the right to representation by counsel at this hearing if they so desired. We ordered the relator, respondent, and Garza to file any affidavits necessary to support any facts upon which they planned to rely at the hearing to prove, deny, or excuse the alleged contempt. We further ordered that any other party to this proceeding should also file any affidavits necessary to show any relevant facts by this same date. The proceedings were recorded by a certified court reporter.

ñales appointed himself to preside over this matter.[8] Two days prior to this, relator filed an amended petition asking that this Court (1) command respondent (who, pursuant to Judge Bañales's order is no longer the presiding judge) to vacate her January 17 order, and (2) remove Garza as attorney pro tem.

## II. THE ISSUES

In his petition, relator asserts the following six issues:[9] (1) this Court has jurisdiction to grant relator's writ of mandamus; (2) the trial court abused its discretion by not initially seeking to have relator temporarily removed from office through the procedures prescribed in chapter 87 of the Texas Local Government Code; (3) the trial court abused its discretion by appointing an attorney pro tem without relator's consent; (4) the trial court abused its discretion by failing to provide relator with notice and a hearing prior to the appointment; (5) the trial court abused its discretion by taking an act that caused the district attorney's office to cease all operations; and (6) the trial court abused its discretion by appointing an individual who was not a "competent attorney" because of, *inter alia*, bias and conflicts of interest.

In response, respondent contends that (1) relator has adequate remedies at law, (2) she acted within her legal capacity in appointing an attorney pro tem, and (3) she has taken no action which has caused the district attorney's office to cease all operations.

## III. Mootness and Abatement

Before discussing the merits of relator's issues on appeal, we must comment on whether this case has become moot or should be abated.

A case is determined to be "moot" if the issues presented in the case are no longer "live" or if the parties lack a legally cognizable interest in the outcome.[10] An entire appeal does not become moot, however, simply because one issue in the case becomes moot.[11] If a case becomes moot on appeal, the appellate court must set aside all previous orders and judgments; both the appeal and the underlying cause must be dismissed.[12]

The January 17 order appointed Garza to "investigate" matters concerning relator, which gave way to Garza's involvement with the July Term grand jury. While relator's appeal was pending, the grand jury's term expired; as a result, this portion of the order has been rendered moot. The order, however, also appointed Garza to "prosecute" certain matters— matters for which relator has been indicted. This issue is still alive. Accordingly, relator's original proceeding is not moot.

As to the matter of abatement, this Court has considered whether, in light of respondent's recusal and the subsequent appointment of Judge Bañales, this pro-

---

**8.** If any of the issues raised in this original proceeding have been presented to Judge Bañales for him to act upon as a threshold matter, the appellate record is entirely silent in that regard. The record does show, however, that Judge Bañales declined to void the January 17 order upon recusing respondent. We believe that his refusal to do so was appropriate. *See Rio Grande Valley Gas Co. v. City of Pharr*, 962 S.W.2d 631, 637–38 (Tex. App.-Corpus Christi 1997, pet. dism'd w.o.j.).

**9.** For purposes of organization, relator's issues have been reordered and will be referred to numerically as herein sequenced.

**10.** *Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex.1988).

**11.** *See id.*

**12.** *Freeman v. Burrows*, 141 Tex. 318, 171 S.W.2d 863, 863 (1943).

ceeding should be abated pursuant to rule of appellate procedure 7.2(b).[13] Rule 7.2(b) states:

> If the case is an original proceeding under Rule 52, the court must abate the proceeding to allow the successor to reconsider the original party's decision. In all other cases, the suit will not abate, and the successor will be bound by the appellate court's judgment or order as if the successor were the original party.[14]

A "successor" in the context of rule 7.2, however, is an individual who succeeds a public officer who has *ceased to hold office.*[15] In the instant case, respondent has not ceased to hold office; she has simply been recused from this proceeding. Additionally, we have found no case law applying rule 7.2(b) in response to a recusal that occurred pending an original proceeding or appeal. Because we are not persuaded that the rule is applicable to this proceeding, we decline to abate.

## IV. ISSUE ONE: JURISDICTION

 Mandamus issues only to correct a clear abuse of discretion or a violation of a duty imposed by law when there is no other adequate remedy.[16] If the trial court's order is one within its discretionary powers, the relator must show that it is a "clear abuse of discretion." [17] A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error.[18] With respect to resolution of factual issues or matters committed to the trial court's discretion, for example, the reviewing court may not substitute its judgment for that of the trial court.[19] The relator must establish that the trial court could reasonably have reached only one decision.[20] Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable.[21]

 On the other hand, review of a trial court's determination of the legal principles controlling its ruling is much less deferential.[22] A trial court has no "discretion" in determining what the law is or applying the law to the facts.[23] Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ.[24] Even when a trial court is confronted with an issue of first impression in Texas, the court still has no "discretion" in determining what the law is or applying the law to the facts.[25] "Consequently, the trial court's erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion." [26]

 A writ will not issue to correct a trial court's abuse of discretion if relator

---

13. TEX.R. CIV. P. 7.2(b).

14. *Id.*

15. *See id.* 7.2(a).

16. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding).

17. *Urbish v. 127th Judicial Dist. Court,* 708 S.W.2d 429, 431 (Tex.1986) (orig.proceeding).

18. *Walker,* 827 S.W.2d at 839.

19. *Id.*

20. *Id.*

21. *Id.*

22. *Id.*

23. *Id.*

24. *Id.*

25. *Huie v. DeShazo,* 922 S.W.2d 920, 928 (Tex.1996) (orig.proceeding).

26. *Id.*

fails to demonstrate that he has no adequate remedy by appeal.[27] Mandamus is intended to be an extraordinary remedy, available only in limited circumstances.[28] The writ will issue only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies.[29] "The requirement that persons seeking mandamus relief establish the lack of an adequate appellate remedy is a 'fundamental tenet' of mandamus practice."[30] An appellate remedy is not inadequate merely because it may involve more expense or delay than obtaining mandamus relief.[31]

In her response to relator's petition, respondent contends that relator has adequate remedies "afforded to him through the criminal justice system" for the purpose of responding "to the appointment and any other issues that relate to that appointment." Respondent explains that "[s]ince the filing of these original proceedings, Relator has been indicted by a Willacy County Grand Jury. Therefore, Relator can avail himself of the criminal justice system as any accused can and address his concerns in that forum." We agree with respondent's contention to a limited extent.

What makes this case particularly tricky is that relator comes before us wearing two different hats: the hat of a district attorney and the hat of a criminal defendant. Each hat affords relator the ability

to air certain grievances—grievances that, at times, can only be properly raised under the auspices of one of the hats. The challenge before this Court is to identify which hat relator is wearing when he raises a specific argument. If we come across an argument that can only be raised under the hat of a criminal defendant, then it is incumbent upon this Court to dismiss that argument because all appropriate remedies can be obtained through the criminal justice system at this time.

It is equally incumbent upon this Court, however, to address and provide appropriate relief when relator raises grievances while wearing the hat of a district attorney. At the time relator filed his original petition with this Court, there were no outstanding indictments against him. Relator was solely before us in his capacity as District Attorney of Willacy County—an elected official whose office is "constitutionally created and therefore constitutionally protected."[32] Relator has raised some complaints on appeal that are not characteristic of the typical criminal defendant; rather, these complaints are those of an elected official who contends that his statutorily provided powers have been unlawfully usurped by respondent's appointment of an attorney pro tem.[33]

Guided by this framework, we find that relator does not have an adequate remedy

27. *See Walker,* 827 S.W.2d at 840.

28. *Id.*

29. *Id.*

30. *Id.*

31. *See CSR Ltd. v. Link,* 925 S.W.2d 591, 596 (Tex.1996); *Walker,* 827 S.W.2d at 842.

32. *State ex rel. Eidson v. Edwards,* 793 S.W.2d 1, 4 (Tex.Crim.App.1990).

33. *See* TEX.CODE CRIM. PROC. ANN. art. 2.01 (Vernon 2005) ("Each district attorney shall represent the State in all criminal cases in the district courts in his district ....."); *id.* 20.03 ("The attorney representing the State, is entitled to go before the grand jury and inform them of offenses liable to indictment ....."); *id.* 20.04 ("The attorney representing the State may examine the witnesses before the grand jury and shall advise as to the proper mode of interrogating them."); *id.* 20.20 ("The attorney representing the State shall prepare all indictments....").

by appeal.[34] Accordingly, we must now assess relator's remaining issues to determine whether respondent's January 17 order constitutes a clear abuse of discretion, thus entitling relator to mandamus relief.

## V. ISSUE TWO: CHAPTER 87 OF THE TEXAS LOCAL GOVERNMENT CODE

### 1. Removal Proceedings under Chapter 87

According to the Texas Constitution, "The Legislature shall provide by law for the trial and removal from office of all officers of this State, the modes for which have not been provided in this Constitution." [35] County officers are subject to this constitutional provision.[36] Accordingly, the Legislature has enacted the rules governing the trial and removal of a district attorney.[37] These rules are promulgated in chapter 87 of the Texas Local Government Code.

Under chapter 87, a district judge may remove a county officer (e.g., a district attorney) from office for incompetency, official misconduct, or intoxication.[38] A removal proceeding begins by filing a written petition in a district court of (1) the county in which the officer resides, or (2) the county where the alleged cause of removal occurred, if that county is in the officer's judicial district.[39] This petition may be filed by any resident of this state who has lived for at least six months in the county in which the petition is to be filed and who is not currently under indictment in the county.[40] The petition must (1) be

34. *See Terrell v. Greene*, 88 Tex. 539, 31 S.W. 631, 635 (1895) ("In the case of public officers the general rule is, that where a person holds an uncontested title to an office, mandamus may be issued to put him in possession; or where he has an undisputed right to exercise the functions of an office, and having actual and undisputed possession, he is illegally ousted or suspended from the performance of its duties, he may be restored to his rights as such officer by a writ of mandamus."); *see also State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 926 (Tex.Crim.App. 1994) (mandamus remedy was available to district attorney to vacate district judge's order prohibiting two assistant attorneys general from serving as assistant district attorneys; no other legal mechanism short of mandamus would have allowed district attorney to challenge trial court's order and district attorney had clear legal right to have district judge vacate the order); *State ex rel. Eidson*, 793 S.W.2d 1, 5 (Tex.Crim.App. 1990) (mandamus relief was available to challenge order removing district attorney from case). The intermediate appellate courts have likewise exercised mandamus jurisdiction over such situations. *See In re State ex rel. Rodriguez*, 166 S.W.3d 894, 897 (Tex.App.-El Paso 2005, orig. proceeding) ("[I]t has long been the law in Texas that mandamus relief is available to restore the rights of office to an official who has been illegally ousted or suspended from the per-

formance of his duties ... mandamus relief has been available to prosecutors who have been prohibited from representing the State in criminal cases."); *see also In re Reed*, 137 S.W.3d 676, 677 (Tex.App.-San Antonio 2004, orig. proceeding) (conditionally granting mandamus relief where district attorney sought to vacate an order recusing the district attorney's office from prosecuting a case); *see also State ex rel. Hilbig v. Mc-Donald*, 877 S.W.2d 469, 469–70 (Tex.App.-San Antonio 1994, orig. proceeding) (conditionally granting mandamus relief where district attorney sought to vacate an order recusing the entire district attorney's office). *Cf. In re Goodman*, 210 S.W.3d 805, 807 (Tex.App.-Texarkana 2006, orig. proceeding) (conditionally granting mandamus relief requiring disqualification of a county attorney).

35. TEX. CONST. art. XV, § 7.

36. *Meyer v. Tunks*, 360 S.W.2d 518, 520 (Tex. 1962).

37. *See id.*

38. TEX. LOC. GOV'T CODE ANN. §§ 87.012–.013 (Vernon 1999).

39. *Id.* at § 87.015(a).

40. *Id.* at § 87.015(b).

addressed to the district judge of the court in which it is filed, (2) set forth the grounds alleged for the removal of the officer in plain and intelligible language, and (3) cite the time and place of the occurrence of each act alleged as a ground for removal with as much certainty as the nature of the case permits.[41]

After a petition for removal is filed, the person filing the petition must apply to the district judge in writing for an order requiring that the officer be served with citation and the petition.[42] If the judge refuses to issue the order for citation, the petition will be dismissed, and no appeal or writ of error can be taken from the judge's decision.[43] If the judge grants the order for citation, the clerk will then issue the citation with a certified copy of the petition.[44] The citation will order the officer to appear and answer the petition.[45] After the issuance of the order requiring citation of the officer, the district judge may temporarily suspend the officer and may appoint another person to perform his duties.[46]

An officer may be removed only following a trial by jury.[47] In a proceeding to remove the district attorney from office, the county attorney from an adjoining county, as selected by the commissioners court of the county in which the proceeding is pending, shall represent the State.[48]

### 2. Relator's Claim

Relator asserts that when the grand jury initially notified respondent of its de-sire to criminally investigate relator, respondent had the option to direct the grand jurors to file a petition in a manner prescribed by chapter 87, instead of immediately appointing an attorney pro tem. If a grand juror had filed the appropriate petition, respondent could have granted the order for citation, thus allowing respondent to temporarily suspend relator and appoint an attorney pro tem in his place for the purpose of assuming all of relator's official duties. Relator contends that had respondent acted in this fashion, the Willacy County District Attorney's Office would not currently be enmeshed in the ongoing power struggle between relator and Garza. Furthermore, relator argues that respondent clearly abused her discretion in appointing an attorney pro tem without first suspending or removing relator from office under chapter 87, because the law allegedly requires that relator be removed or suspended from office prior to being indicted.

### 3. Discussion

We begin by recognizing that nothing on the face of the January 17 order indicates that respondent is attempting to formally remove relator from office. Though the order may pave the way for relator's future removal,[49] the order itself simply appoints Garza as attorney pro tem for the purpose of investigating and prosecuting relator for alleged criminal activity.[50]

41. *Id.* at § 87.015(c).

42. *Id.* at § 87.016(a).

43. *Id.* at § 87.016(c).

44. *Id.*

45. *Id.* at § 87.016(d).

46. *Id.* at § 87.017(a).

47. *Id.* at § 87.018(a).

48. *Id.* at § 87.018(f).

49. *E.g.,* relator may be removed from office as a result of being convicted of a charge emanating from the indictments drafted by Garza. *See* TEX. LOC. GOV'T CODE ANN. § 87.031 (Vernon 1999).

50. One could arguably assert that, under a strained interpretation of the court of criminal appeals' opinion in *Eidson v. Edwards,* 793 S.W.2d 1 (Tex.Crim.App.1990), the order's removal of respondent from a criminal

■ With regard to relator's claim that he must be removed from office prior to indictment, we find that chapter 87 clearly shows otherwise. Section 87.031 of the local government code states: "The conviction of a county officer by a petit jury for any felony or for a misdemeanor involving official misconduct operates as an immediate removal from office of that officer."[51] This section reveals that conviction can precede, or occur simultaneously with,[52] removal. It thus stands to reason that an indictment, which is a preliminary necessity for pursuing a conviction, can and logically, would also precede removal. Furthermore, the Texas Supreme Court has held that a county "officer may be prosecuted criminally ... either *before* or after the removal proceedings."[53]

The code of criminal procedure clearly reflects the idea that a grand jury needs, and under the law, has the right to rely on, an "attorney representing the State"[54] (e.g., a district attorney) who will assist the grand jury in fulfilling its duties.[55] A grand jury that must seek the advice and assistance of a district attorney who is the subject of the jury's investigation is a recipe for disaster, because the rules place the district attorney in the best position for obstructing the investigation.[56] The code

investigation, albeit one directed at himself, is analogous to a removal from office. *Id.* at 4–5. We note, however, that *Eidson* was a plurality opinion. While four justices endorsed the proposition that removal of a district attorney from a particular case is tantamount to removing the district attorney from his elected office, five justices explicitly rejected this proposition in their concurring and dissenting opinions. Accordingly, the aforementioned proposition is of limited or no precedential value, although we may look to plurality opinions for their persuasive value. *Compare Cooper v. State*, 67 S.W.3d 221, 224 (Tex.Crim.App.2002) (holding a plurality opinion has limited or no precedential value); *Vernon v. State*, 841 S.W.2d 407, 410 (Tex. Crim.App.1992) (noting that a plurality opinion does not have "significant precedential value"); *with State v. Hardy*, 963 S.W.2d 516, 519 (Tex.Crim.App.1997) ("we may look to 'plurality' opinions for their persuasive value").

51. Tex. Loc. Gov't Code Ann. § 87.031(a) (Vernon 1999).

52. *Id.* at § 87.031(b) ("The court rendering judgment in such a case shall include an order removing the officer in the judgment.").

53. *Meyer*, 360 S.W.2d at 520 (emphasis added).

54. " 'The attorney representing the State' means the Attorney General, district attorney, criminal district attorney, or county attorney." Tex.Code Crim. Proc. Ann. art. 20.03 (Vernon 2005).

55. The Legislature has enacted several provisions in the code of criminal procedure dealing with the office of district attorney and its interactions with the grand jury process. Under some of these provisions, a district attorney (1) "is entitled to go before the grand jury and inform them of offenses liable to indictment at any time except when they are discussing the propriety of finding an indictment or voting upon the same," (2) "may examine the witnesses before the grand jury and ... advise as to the proper mode of interrogating them," and (3) "shall prepare all indictments which have been found, with as little delay as possible, and deliver them to the foreman." Tex.Code Crim. Proc. Ann. arts. 20.03, 20.04, 20.20 (Vernon 2005). Additional provisions permit the district attorney to participate further at the grand jury's discretion. Under these provisions, (1) a "grand jury may send for the attorney representing the state and ask his advice upon any matter of law or upon any question arising respecting the proper discharge of their duties," (2) the district attorney may issue a summons or attachment for any witness in the county; and (3) the district attorney may cause a subpoena or attachment to be issued on a witness who may provide material testimony. *Id.* at arts. 20.05, 20.10, 20.11.

56. *See infra* note 62. The Colorado Supreme Court, in addressing the notion of a district attorney assisting a grand jury that is charged with the duty of investigating his office, has stated:

The district attorney is the legal adviser of the grand jury; it is his duty to appear

of criminal procedure "clearly envisions that both [the district attorney and grand jury] will work together to resolve particular matters at issue," [57] and this vision can only be safeguarded, in the sort of situation discussed herein, through the appointment of an attorney pro tem. We believe the law affords a grand jury the automatic right to have a district attorney it can work with appropriately, but this right ceases to become automatic if grand jurors are required to file a petition under chapter 87 for the purpose of acquiring an attorney pro tem's assistance.

■ If a grand juror were to file a petition, the district attorney would not automatically be placed on temporary suspension with an attorney pro tem appointed in his place. The grand juror's petition would first have to be approved by a district judge, and if the judge refuses to issue citation pursuant to the petition, the grand juror would have no remedy by appeal.[58] This would seemingly run afoul of a great deal of case law, because "Texas courts have long described the grand jury as a separate tribunal, independent of the control of judges and prosecutors." [59]

before and advise them from the evidence what charges to make; what testimony is material, relevant and sufficient, and what is not; and if, prior to his presentment, no one can be substituted in his place and stead to manage an investigation in which, from the charge of the court, he is directly or indirectly implicated, it would be within his power to thwart the administration of justice by preventing the preliminary steps being taken necessary to the finding of an indictment.
*People ex. rel. Lindsley v. Dist. Court*, 29 Colo. 5, 66 P. 896, 898 (1901). In light of the statutory provisions outlined in the previous footnote, we believe the concerns raised by the Colorado Supreme Court in *Lindsley* are of equal import in this state.

**57.** *State ex rel. Holmes v. Salinas*, 784 S.W.2d 421, 426 (Tex.Crim.App.1990).

Requiring a grand juror to file a petition would also place an evidentiary burden upon a grand jury—the likes of which have never been recognized in this state. If a grand juror is required to file a petition under chapter 87, the juror would have to "set forth the grounds alleged for the removal of the officer in plain and intelligible language," as well as "cite the time and place of the occurrence of each act alleged as a ground for removal." [60] Placing this evidentiary burden on a grand jury that simply wishes to acquire competent legal assistance is utterly nonsensical, especially because no such burden is ever placed on a grand jury when it decides to initiate an inquiry.[61]

Accordingly, we find that respondent did not commit a clear abuse of discretion by failing to temporarily suspend relator under chapter 87 prior to appointing an attorney pro tem.

## VI. ISSUE THREE: APPOINTMENT OF ATTORNEY PRO TEM WITHOUT RELATOR'S CONSENT

### 1. Relator's Grand Jury Concerns

In his petition, relator initiates discussion of this issue by asserting that respon-

**58.** TEX. LOC. GOV'T CODE ANN. § 87.016 (Vernon 1999).

**59.** *Whittington v. State*, 680 S.W.2d 505, 512 (Tex.App.-Tyler 1984, pet. ref'd).

**60.** TEX LOC. GOV'T CODE ANN. § 87.015 (Vernon 1999).

**61.** Article 20.09 of the code of criminal procedure states that a "grand jury shall *inquire into all offenses* liable to indictment of which any member may have knowledge, or of which they shall be informed by the attorney representing the State, or any other credible person." TEX.CODE CRIM. PROC. ANN. art. 20.09 (Vernon 2005) (emphasis added). Nothing in this article suggests that a grand jury is precluded from inquiring into a district attorney's criminal conduct, nor does it suggest that an evidentiary bar must be satisfied in order for an inquiry to commence.

dent committed acts that violate various articles under chapter 20 of the code of criminal procedure. These acts include (1) being present in the grand jury room while the grand jury is conducting proceedings,[62] (2) addressing the grand jury about a matter before the grand jury,[63] (3) communicating with the grand jury in a manner that is not statutorily prescribed,[64] and (4) failing to preserve the secrecy of the grand jury proceedings.[65] Relator also asserts that respondent erred by allowing the grand jury to initiate a criminal investigation against him during the extended portion of its term.[66]

We believe that relator has the capacity to assert these grievances under both hats, because this alleged judicial behavior—even when taken outside the context of this case—should give both criminal defendants and district attorneys everywhere cause for concern. Nevertheless, we also believe that these grievances, even if supported by fact and law, do not relate to the single question relator has presented for our consideration: Did respondent commit a clear abuse of discretion by issuing the January 17 order? As a result, no matter what hat relator wears, his grand jury concerns are not properly before us, and any relief sought on this basis is denied.

In denying these claims, however, we note that we have not left relator without recourse. As a criminal defendant, relator may seek relief through the criminal justice system, where he could file motions to quash and set aside his indictments. As a district attorney, relator may seek to remedy his grievances by directing them to either the Texas State Commission on Judicial Conduct or the Texas Commission for Lawyer Discipline.

## 2. Distinction Between Attorney Pro Tem and Special Prosecutor

■■■■ In returning our focus to the January 17 order, we take time to note the order's language: "IT IS THE ORDER OF THE COURT that *Gustavo Garza* is appointed attorney Pro Tem otherwise known as Special Prosecutor...." Though the order treats the terms "attorney pro tem" and "special prosecutor" as if they were interchangeable, the terms are far from synonymous. A "district attorney pro tem" is appointed by the district court, and after taking the oath of office, assumes the duties of the elected district attorney and, in effect, replaces the latter in performing germane functions of office for purposes contemplated by the appointment.[67] On the other hand, a "special prosecutor" is permitted by the elected district attorney to participate in a particular case to the extent allowed by the prosecuting attorney, without being required to take the constitutional oath of office.[68] Though respondent's order used the terms interchangeably, it is clear that she sought to appoint an attorney pro tem under article 2.07, and the parties do not contend otherwise.[69]

62. *See* Tex.Code Crim. Proc. Ann. art. 20.011 (Vernon 2005).

63. *Id.* at § 20.04.

64. *Id.* at § 20.06.

65. *Id.* at § 20.02.

66. *See generally id.* at § 19.07 (stating that a district judge may extend a grand jury's term for up to ninety days to allow the grand jury to complete an ongoing investigation that was initiated during its original term); *State v. Flournoy, et al.*, 187 S.W.3d 621, 624 (Tex. App.-Houston [14th Dist.] 2006, no pet.).

67. *State v. Rosenbaum*, 852 S.W.2d 525, 529 (Tex.Crim.App.1993) (Clinton, J., concurring).

68. *Id.*

69. This Court's ability to decipher an order's intent should not minimize the importance of a trial court carefully wording the order ap-

### 3. Relator's Claim

Relator correctly asserts that a judge may only appoint an attorney pro tem when one of four circumstances exist: (1) there is no attorney for the State; (2) the district attorney is absent from the county or district; (3) the district attorney is unable to perform the duties of his office; or (4) the district attorney is disqualified to act in any case or proceeding.[70] Though the January 17 order does not tell us which circumstance the judge relied on, the factual nature of this case and the arguments of the parties direct our attention to the issue of disqualification from a case or proceeding.

Relator contends that under article 2.07, a district attorney can only be disqualified when the attorney requests to be disqualified and a court approves that request. Relator seemingly relies on subsection (b–1) of article 2.07, which states, "An attorney for the state who is not disqualified to act may request the court to permit him to recuse himself in a case for good cause and upon approval by the court is disqualified."[71] If relator's interpretation of subsection (b–1) is correct, the initial language of the subsection—"[a]n attorney for the state who is not disqualified to act"—is

rendered meaningless. This language clearly envisions the possibility that a district attorney may be disqualified prior to any request for recusal. With that said, we must now determine the circumstances by which such a "possibility" is created.

### 4. Existing Limitations on Disqualification

In *Eidson v. Edwards*, the court of criminal appeals held, "[i]f there is a conflict of interests on the part of the district attorney or his assistants … the responsibility of recusal lies with them, not with the trial court judge."[72] Though *Eidson* is of questionable precedential value,[73] its "holding" was later adopted by the court of criminal appeals in a majority opinion.[74] To date, there are only two recognized exceptions to this holding. The first is derived from the court of criminal appeals' plurality opinion in *Hill v. Pirtle*;[75] the second comes from article 2.01 of the code of criminal procedure.[76] According to *Hill*, "A trial court … may disqualify a district attorney or his staff on the basis of a conflict of interest that … rises to the level of a due process violation."[77] Under the code of criminal procedure, a district attorney is disqualified from representing the State "in cases where he has been,

---

pointing an attorney pro tem and the constitutional oath, so as to distinguish between an "attorney pro tem" and a "special prosecutor." *See Stephens v. State*, 978 S.W.2d 728, 731 (Tex.App.-Austin 1998, pet. ref'd).

**70.** *See* Tex.Code Crim. Proc. Ann. art. 2.07(a) (Vernon 2005).

**71.** *Id.* at art. 2.07(b–1).

**72.** *Eidson*, 793 S.W.2d at 6. This holding has been followed by numerous courts of appeals. *See, e.g., Gonzalez v. State*, 115 S.W.3d 278, 286 (Tex.App.-Corpus Christi 2003, pet. ref'd); *Fluellen v. State*, 104 S.W.3d 152, 161 (Tex. App.-Texarkana 2003, no pet.).

**73.** *See In re Goodman*, 210 S.W.3d 805, 815 (Tex.App.-Texarkana 2006, orig. proceeding); *State ex rel. Hilbig v. McDonald*, 877 S.W.2d 469, 470 (Tex.App.-San Antonio 1994, no pet.).

**74.** *See Johnson v. State*, 169 S.W.3d 223, 229 (Tex.Crim.App.2005) ("A prosecutor's refusal to recuse himself from a case cannot be corrected because the trial court has no authority to force a recusal.").

**75.** *Hill*, 887 S.W.2d at 927.

**76.** Tex.Code Crim. Proc. Ann. art. 2.01 (Vernon 2005).

**77.** *Hill*, 887 S.W.2d at 927.

before his election, employed adversely." [78]

The nature of the due process concerns raised in *Hill* are inapplicable to the instant case, as is the limitation imposed by article 2.01. Nevertheless, it would be inappropriate to limit ourselves to these exceptions as we are confronted with a case of first impression in the State of Texas. We have found no Texas case law factually similar to the case at hand, nor have we found any case law that addresses the legal question now before us: Can a judge appoint an attorney pro tem to assist a grand jury in investigating a district attorney's conduct when the district attorney has not sought recusal?

### 5. *Eidson's* Inapplicability

Though we previously quoted the *Eidson* "holding," it is worth taking a broader look at the its contextual language at this time. The *Eidson* opinion reads,

There may be instances when a prosecutor must recuse himself from the prosecution of an individual. If there is a conflict of interests on the part of the district attorney or his assistants, however, the responsibility of recusal lies with them, not with the trial court judge. We do not wish to imply that a defendant would be left without recourse if the prosecution's failure to recuse itself violated his due process rights. If, for example, a prosecutor who had previously represented a defendant later personally prosecuted the defendant in the same matter, the defendant's conviction would violate the Fourteenth Amendment of the United States Constitution and Article I, Section 19 of the Texas Constitution.[79]

This language demonstrates the inapplicability of *Eidson* to the case at hand. First, the *Eidson* plurality was focused on instances whereby a prosecutor must decide whether to recuse himself from the prosecution of an *individual*; it was not focused on the circumstances in which a prosecutor must decide whether to recuse himself from the prosecution of *himself*. Second, the *Eidson* plurality identified federal and state constitutional protections—safeguards that are not as readily available in this case. The plurality further argued that, "even more importantly," a district attorney's "violation of the rules will subject his cases to reversal on appeal when his unprofessional conduct results in a denial of due process to a defendant." [80]

The safeguards espoused by the *Eidson* plurality provide no protection at all in the instant case. The remedy of seeking a reversal on appeal is wholly inapplicable to circumstances in which a grand jury's investigation may be thwarted or obstructed by the very individual it is investigating.

For these reasons, we conclude that *Eidson* is inapplicable to the case at hand and, accordingly, does not control our disposition of the instant case. Absent controlling Texas case law, we now look to case law in other states for guidance.

### 6. Outside Treatment

In *Northcutt v. Howard*,[81] a Kentucky appeals court dealt with a case similar to the one before us. In *Northcutt*, a judge instructed a grand jury to investigate the commonwealth attorney and other elected officials and promptly appointed an attorney pro tem to assist this investigation.[82]

---

78. Tex.Code Crim. Proc. Ann. art. 2.01 (Vernon 2005).

79. *Eidson*, 793 S.W.2d at 6 (citations omitted).

80. *Id.*

81. *See generally Northcutt v. Howard*, 279 Ky. 219, 130 S.W.2d 70 (1939).

82. *Id.* at 71.

The commonwealth attorney contested this act, requiring the judge to seek a declaration of his rights before the appeals court regarding the appointment. In the course of assessing the propriety of the judge's action, the appeals court stated:

There can be no doubt that if the commonwealth attorney was under indictment he would be disqualified from prosecuting the case against himself, and the circuit court in such case has the right to appoint a commonwealth attorney pro tem to conduct the trial of a felony charge against the commonwealth attorney. This being true, it follows as a matter of course that *when the grand jury is actually investigating such a charge against the commonwealth attorney, he is thereby automatically disqualified from assisting the grand jury in such investigation.*[83]

In *Commonwealth v. McHale,*[84] the Pennsylvania Supreme Court upheld a trial judge's appointment of a "special district attorney." In *McHale,* the regular district attorney had refused to sign and send indictments to a grand jury because he claimed the indictments contained factual errors. These indictments addressed an allegation of electoral fraud—fraud that, if true, would have increased the district attorney's vote in an earlier election.[85] The trial judge provided the district attorney an opportunity to sign the indictments or to present alternative indictments, but the district attorney failed to do so. The judge then appointed an attorney to assist the grand jury. On appeal to the supreme court, it was argued that the indictments should be quashed because they were not signed by the district attorney. The court rejected this argument, stating:

The appointment ... was eminently proper, as the district attorney was a candidate at the general election at which the alleged frauds were committed, and which frauds, it is stated, increased his vote. It would therefore have been a breach of professional and official propriety for him to have acted as district attorney in these cases. But it is said the appointment was illegal because the Constitution adopted since the act of 1866 was passed, makes the district attorney a constitutional officer, and as such he cannot be stripped of his powers by the legislature. There is little force in this suggestion. While the legislature may not abolish the office, it can control the officer. They can regulate the performance of his duties, and punish him for misconduct, as in the case of other officers. And where he neglects or refuses to act, *or where, from the circumstances of a given case, it is improper and indelicate for him to act, it is competent for the legislature to afford a remedy.*[86]

In *Lattimore v. Vernor,*[87] a county attorney sought a writ of prohibition after a district judge appointed an attorney pro tem to assist a grand jury that was investigating whether the county attorney had committed any criminal acts.[88] The Oklahoma Supreme Court held:

A county attorney is disqualified to appear before a grand jury when said grand jury is investigating the conduct of said county attorney, and the district court has authority, under section 5745,

---

83. *Id.* at 71–72 (emphasis added).

84. *See generally Commonwealth v. McHale,* 97 Pa. 397 (1881).

85. *Id.* at 406.

86. *Id.* (emphasis added).

87. *Lattimore v. Vernor,* 142 Okla. 105, 288 P. 463 (1930).

88. *Id.* at 463.

C.O.S. 1921, to declare the disqualification of the county attorney, in so far as he is disqualified, and to appoint a special or substituted county attorney to conduct such inquiry, in so far as the county attorney is disqualified, subject to a superintending control by the Supreme Court.[89]

An Oklahoma state statute authorized a district court to appoint an attorney pro tem when the county attorney was "disqualified to act."[90] The supreme court noted, however, that even if the statute did not have the "disqualified to act" language, the district court could have utilized its "inherent power" to make the appointment.[91]

In addition to the Oklahoma Supreme Court, the assertion that a court has the inherent power to appoint an attorney pro tem when the county elected attorney is under grand jury investigation has been embraced by the Arkansas Supreme Court,[92] Ohio Supreme Court,[93] Colorado Supreme Court,[94] Indiana Supreme

---

89. *Id.* at 464.

90. *Id.* Section 5745 of the Oklahoma statutes provided that: "The district court, whenever there shall be no county attorney for the county, or when the county attorney shall be absent from the court, or unable to attend to his duties, or disqualified to act, may appoint, by an order to be entered in the minutes of the court, some suitable person to perform for the time being the duties required by law to be performed by the county attorney, and the person so appointed shall thereupon be vested with all the powers of such county attorney for that purpose." *See* OKLA. COMP. STAT. § 5745 (1921), as discussed in *Lattimore*.

91. *Id.*

92. *Weems v. Anderson*, 257 Ark. 376, 516 S.W.2d 895, 898 (1974). In *Weems*, the supreme court stated:

> Since prosecuting attorneys and other State officials may be indicted and tried for alleged criminal activities whether there is an impeachment or not, there must be some way within the framework of our State's legal system for the prosecuting attorney to be indicted and tried even when the alleged crime occurs within the same judicial district in which he is elected the prosecuting attorney. . . .
>
> . . . .
>
> The absence of specific statutory authority for the appointment of a special prosecuting attorney under the circumstances of this case does not mean that the court is without authority to do what justice, reason and common sense dictate must be done. In other jurisdictions where there was the same lack of statutory authority for the appointment of a special prosecuting attorney under circumstances such as those here presented, the courts have held that there is an *inherent power in the courts to make* such an appointment. We hold that the Arkansas Circuit Courts also have such inherent power.

*Id.*

93. *State ex rel. Thomas v. Henderson*, 123 Ohio St. 474, 175 N.E. 865, 866–67 (1931) (recognizing the inherent power of a court—despite "[t]here being no definite specific statutory provision for a finding of the temporary disqualification of the prosecuting attorney,"—to appoint an attorney to assist a grand jury "by reason of the prosecutor himself being under investigation," thus making "it impossible that either he or any assistant under his direction should act").

94. *Lindsley*, 66 P. at 898–99. The Colorado Supreme Court stated:

> If, from any source which he deems sufficiently reliable to prompt him to act, the judge obtains information implicating the district attorney in any alleged offense which he has called to the attention of the grand jury, and acting on such information, directs that body to investigate the district attorney with respect to such offense, such action ipso facto disqualifies the district attorney from acting in such matters; and the judge so doing, charged as he is with the responsibility of not knowingly permitting the channels of justice to become obstructed, has the undoubted authority, and it would be his bounden duty, to appoint an attorney to act in the place and stead of the district attorney with respect to such matters. The district court has the inherent

Court,[95] and a California court of appeals.[96]

## 7. This Court's Holding

 In an opinion authored over 140 years ago, the Texas Supreme Court held:

It is a part of the duty of the district attorney to prepare judgments under the direction of the grand jury; but the powers and duties of the grand jury do not cease because there may happen to be no district attorney. In case of a vacancy in the office of district attorney, or in case of the district attorney's temporary disability to act, or *in any particular case where there might exist special reasons why he should not act,* any other competent person might act in the preparation of indictments, by the authorization of the court.[97]

We are currently confronted with a case in which there undoubtedly exist special reasons why relator should not act and why he is disqualified to act. Accordingly, respondent was authorized to appoint a competent person to act in relator's place, and we find that this authorization is explicitly derived from article 2.07 of the code of criminal procedure.[98]

 A judge has the authority, as well as an obligation, to appoint an attorney pro tem to assist a grand jury that intends to criminally investigate the district attorney.[99] In such a situation, the district

---

power to protect itself, and direct investigations in a manner which will render them thorough and impartial. Reason dictates and simple justice demands that no official or individual can take part in an investigation before a grand jury the result of which may affect him, either directly or indirectly. *Id.* (citations omitted).

95. *State ex rel. Spencer v. Criminal Court of Marion County,* 214 Ind. 551, 15 N.E.2d 1020, 1022 (1938) (discussing a court's inherent power and noting that "[i]t cannot be doubted that, where it is established that the prosecuting attorney is an interested party . . . the court may appoint an attorney to represent the interests of the state").

96. *Sloane v. Hammond,* 81 Cal.App. 590, 254 P. 648, 655 (1927). The California court of appeals stated:

The law is well settled, upon just considerations of public policy, as we have seen, that courts possess the inherent power to name special counsel to act in the place of disqualified public prosecutors. . . . Several of the cases to which we have pointed above are to the effect that the inherent power of the courts to appoint exists irrespective or independent of statute. . . . It cannot be questioned that it is the duty of the legislature to enact laws under which district attorneys shall be elected or appointed, and to make it the general duty of the law-making body to provide for an adequate prosecution of those cases in which district attorneys themselves are charged with crime, or in which those regular prosecutors are disqualified for some other reason. *Id.*

97. *State v. Gonzales,* 26 Tex. 197, 199, 1862 WL 2833, *2 (1862) (emphasis added).

98. Tex.Code Crim Proc Ann. art. 2.07 (Vernon 2005).

99. We observe that while a judge—when faced with a situation resembling respondent's—may be obligated to appoint an attorney pro tem to assist the grand jury's investigation, the judge is in no way a slave to that investigation. As noted by the court of criminal appeals in *Ex Parte Edone:*

the court also exerts some "control" or supervision over the grand jury under [article 20.15 of the code of criminal procedure]. The court decides if the question propounded before the grand jury is proper, and, thus, decides whether or not to aid the investigation of the grand jury by then compelling an answer. Without the action of the court the grand jury is powerless to enforce its investigative duty to gain testimony from a witness and decide on the presentment of an indictment. In this sense, the court acts independently and in a supervisory role (deciding whether to compel an answer). . . .

*Ex Parte Edone,* 740 S.W.2d 446, 448 (Tex. Crim.App.1987).

attorney is deemed "disqualified to act" for purposes of article 2.07(a) of the code of criminal procedure, and disqualification need not solely arise from the attorney's own motion to recuse under subsection (b–1).[100]

While we find that respondent's appointment of an attorney pro tem was explicitly authorized by article 2.07, we further find that such appointment was implicitly authorized by a court's inherent power. In *State v. Johnson*,[101] the Texas Court of Criminal Appeals held:

> In addition to specific power to act conferred by constitutional provision, statute, or common law, all courts have inherent authority to take certain actions. In *Eichelberger v. Eichelberger*, 582 S.W.2d 395 (Tex.1979), our sister court noted that in addition to express grants of power, *a court has inherent judicial power, which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, or in the preservation of its independence and integrity*. Courts may also have implied authority to act, arising from specific grants of power.
>
> In sum, a court may take a particular action only if that action is authorized by constitutional provision, statute, or common law, or the power to take the action arises from an inherent or implied power.[102]

Through the appointment of an attorney pro tem, respondent denied relator the opportunity to participate in the grand jury's investigation into his conduct. In doing so, the appointment served to preserve the integrity of the court and aid in the administration of justice. We thus hold that respondent did not commit a clear abuse of discretion by disqualifying relator without his consent.

## 8. The Limitations of this Court's Holding

We must make a few essential observations concerning this Court's holding. We begin by observing that, from the record before us, it appears that the grand jurors collectively approached respondent with a desire to investigate relator. The record does not reflect that respondent disqualified relator upon receiving notice that only one or a few grand jury members wanted to investigate relator. We also observe that the grand jury apparently investigated relator on its own initiative; the record does not reflect that respondent directed or prompted the commencement of the investigation. If the record regarding these circumstances reflected otherwise, we cannot say that our opinion would remain the same.

■■■ Lastly, we held that respondent had the authority to disqualify relator because the grand jury wished to investigate relator for possible *criminal* conduct (e.g., "voter fraud"). When a grand jury wishes to investigate the district attorney for possible criminal wrongdoing, we have found that a judge is legally authorized to appoint an attorney pro tem to assist with the investigation because doing so is necessary to ensure that the grand jury is able to properly perform its duties. An appointment cannot be similarly justified, however, when the appointment is made to assist a grand jury in investigating a district attorney for non-criminal matters because the grand jury would be acting out-

---

**100.** Tex.Code Crim. Proc. Ann. art. 2.07(a), (b–1) (Vernon 2005).

**101.** *State v. Johnson*, 821 S.W.2d 609, 612 (Tex.Crim.App.1991).

**102.** *Id.* at 612 (footnotes omitted) (emphasis added).

side of its legally prescribed duties. It is evident under the law of Texas that a grand jury has no authority to investigate civil matters or to make any investigation into circumstances where no criminal offense is suspected or alleged.[103] Accordingly, a judge should be inclined to restrain, rather than assist, a grand jury that is investigating a matter outside the scope of its authority.

 In the instant case, respondent wrongfully assisted the grand jury in commencing an investigation into several non-criminal matters by appointing an attorney pro tem to aid in investigating said matters. These matters related to whether relator requested the grand jury to (1) investigate civil matters, (2) subpoena the District Judge, (3) investigate and indict several Willacy County elected officials, (4) present indictments without being shown supporting evidence, and (5) "true bill" a case even though the grand jury was in favor of a "no bill." These concerns fail to suggest any intelligible indicia of any criminal offense that may have been committed. While we find all this to be problematic, we do not believe that the January 17 order should be deemed voidable as a result. The order did, nonetheless, evidence the jury's desire to acquire the assistance of an attorney pro tem to investigate relator for possible criminal wrongdoing—theft, attempted theft, tampering with records, perjury, abuse of office, and voter fraud—a fact that is essential to this Court's holding.

## VII. ISSUE FOUR: RIGHT TO NOTICE AND A HEARING

Relator asserts that even if respondent had the power to disqualify him and to appoint an attorney pro tem, he should have been afforded notice and a hearing prior to the appointment. While this is not explicitly required by article 2.07, relator contends the law implicitly requires that notice and a hearing be afforded when a district attorney has not elected to voluntarily disqualify himself. Relator states that "[a] finding of disqualification would require that the Court conduct a hearing, allow for the presentation of evidence of disqualification, and allow the duly elected District Attorney the opportunity to present evidence and authorities showing that disqualification was not proper." Relator does not cite any law to support his assertion, and our own efforts to find law on point has again led us to look toward case law from other states.

### 1. Outside Treatment

Only a handful of courts have addressed the very contention relator asserts herein. Among these courts, we find the treatment provided by the West Virginia Supreme Court to be of great guidance.

### a. West Virginia

In *State ex rel. Matko v. Ziegler*,[104] the West Virginia Supreme Court addressed a case that is nearly factually identical to the one now before us. The facts in *Matko* are as follows:

On November 12, 1970, after the grand jury had returned several indictments, the foreman of the grand jury informed the special judge that some members of the grand jury desired to investigate other matters, and one grand juror, in the presence of the [elected prosecutor], stated that the matters in question related to bribery concerning [the prosecu-

---

**103.** See TEX.CODE CRIM. PROC. ANN. art. 20.09 (Vernon 2005); Op. Tex. Att'y Gen. No. M–1171 at *4 (1972).

**104.** *State ex rel. Matko v. Ziegler*, 154 W.Va. 872, 179 S.E.2d 735 (1971), *overruled on other grounds by Smoot v. Dingess*, 160 W.Va. 558, 236 S.E.2d 468, 472 (1977).

tor].... [T]he court advised the jury that it could investigate the matters and in the presence of the grand jury informed [the prosecutor] that he would appoint a special prosecuting attorney to conduct the investigation as the court was of the opinion that [the prosecutor] and his assistants were disqualified from acting in the matters. The court then excused the grand jury until November 18.

....

The grand jury reconvened on November 18, and on November 23, returned [an] indictment against [the prosecutor]. Before the adjournment of the grand jury, [the prosecutor] ... filed his petition in which he prayed that the grand jury be discharged and dismissed; ... that the special prosecuting attorney be discharged and the order appointing him rescinded; ... [and] that, if the grand jury were not discharged, ... that [the prosecutor] be permitted to appear before the grand jury and give such testimony as he might desire.... [T]he grand jurors informed the court that they were unwilling to hear any testimony by [the prosecutor], and ... the court refused to grant [the prosecutor's] prayer.... [105]

The supreme court first ruled that the judge had authority to make the appointment under West Virginia Code § 7-7-8, which provided that "if in any case the prosecuting attorney and his assistant be unable to act, *or if in the opinion of the court it would be improper for him or his assistant to act*, the court shall appoint

some competent practicing attorney to act in such case." [106] The court then went on to reject the prosecutor's claim that he should have been afforded notice and a hearing, stating:

> The statute clearly contemplates summary action by the trial court, in which a proceeding is pending, and makes no provision for notice to the prosecuting attorney or for a hearing concerning his disqualification to act in the particular circumstances. Any provision for notice and hearing would result in delay and operate to defeat the purpose of the statute. Furthermore, notice and hearing are generally unnecessary for, as here, there is no dispute in the material facts and the court and the prosecuting attorney were entirely and equally familiar with the situation which disqualified the petitioner from acting as the prosecuting attorney in connection with the proceedings relating to his indictment and prosecution.[107]

The West Virginia Supreme Court revisited *Matko* eight years later in *State ex rel. Preissler v. Dostert.*[108] In *Preissler*, a judge removed the elected prosecutor from a case and appointed an attorney to act in his place.[109] The judge never received a formal request to remove the prosecutor;[110] rather, the judge predicated removal upon his belief that the prosecutor had made statements about the case that (1) violated the code of professional responsibility and (2) evidenced an intent not to prosecute.[111] The supreme court, recognizing that the judge had disqualified the prosecutor without any formal request to

---

105. *Id.* at 737–38.

106. *Id.* at 742 (emphasis added).

107. *Id.*

108. *State ex rel. Preissler v. Dostert,* 163 W.Va. 719, 260 S.E.2d 279, 286–87 (1979).

109. *Id.* at 281.

110. *Id.* at 285.

111. *Id.* at 285 n. 8.

do so, held that the judge "was not empowered to enter the order on his own motion." [112] The court then proceeded to address the question of whether a judge had the power "to discharge summarily a publicly elected prosecutor from the performance of his duty." In addressing this question, the court compared *Preissler* and *Matko,* noting the factual distinctions that led to each elected prosecutor's disqualification:

> We note, however, that *Matko* involved a proceeding in the circuit court wherein the elected prosecuting attorney had been indicted by the grand jury upon a felony charge. The disqualification of the prosecutor to act resulted from his status as a criminal defendant, obvious on the face of the indictment. There was no need for a hearing since his status inherently rendered his prosecution of the case improper. Here, however, the determination of impropriety to act is not based on the status of the prosecutor but rather on the issue of the prosecutor's refusal to prosecute. Not only does the question require presentation of facts in order to enable the judge to reach an opinion on the matter, but it also requires a charge that the prosecutor is avoiding or sidestepping the duties imposed on him by the Constitution and by his office. In such a situation the circuit court judge cannot summarily override the Constitutional mandate that the prosecuting attorney perform the duties of his office without first conducting a full and proper hearing. Consequently, we would limit the holding in *Matko,* on this issue, to the facts in that case, and we would hold that where

recusal of a prosecuting attorney from the prosecution of the criminal case under W. Va.Code § 7–7–8 is sought on the basis of his failure to perform his official duties, the circuit court judge cannot summarily recuse the prosecutor but must afford the opportunity to have a hearing on the matter. . . . [113]

*Preissler* thus established that, as a general rule, an elected prosecutor is entitled to notice and a hearing prior to a judicial determination that he is disqualified to act in a case or proceeding; meanwhile, *Matko's* holding—bound by the unique factual situation from which it was derived—was left as an exception to this rule. *Preissler* went on to hold that, before a prosecutor may be disqualified from acting in a particular case, "the reasons for his disqualification must appear on the record, and where there is any factual question as to the propriety of the prosecutor acting in the matter, he must be afforded notice and an opportunity to be heard." [114]

### b. Other Courts

In *State ex rel. Ilvedson v. District Court,* [115] the North Dakota Supreme Court confronted a case that was factually similar to *Preissler.* In *Ilvedson,* a group of individuals presented the elected prosecutor with a petition, requesting that he take action against the county commissioners to recover a debt owed to the county. [116] When the prosecutor failed to take an action that satisfied the petition's endorsers, they requested the assistance of the district judge. [117] In response, the judge disqualified the prosecutor from undertaking any further action against the commissioners, and assigned the responsibility for

---

112. *Id.* at 285.

113. *Id.* at 286–87.

114. *Id.* at 287.

115. *State ex rel. Ilvedson v. District Court,* 70 N.D. 17, 291 N.W. 620 (N.D.1940).

116. *Id.* at 622.

117. *Id.*

all future action to an appointed attorney.[118] The judge derived his appointment authority from a statute that allowed a judge to appoint an attorney when the prosecutor failed or neglected to prosecute a case that the judge believed should be prosecuted.[119] Though the statute did not explicitly afford the prosecutor a right to notice and a hearing prior to a finding of disqualification, the prosecutor argued he was entitled to as much. The supreme court agreed with the prosecutor, stating:

> Assuming, without deciding, that the legislature may provide for a partial or limited removal of the state's attorney—removal in so far as the institution and prosecution of one particular action is concerned—clearly it may not authorize such removal except after notice and hearing. Hence, if the legislature intended to confer upon the district judge power to determine whether the state's attorney has refused or neglected to perform his duty, and to order that the state's attorney be deprived of all power and duty as such in connection with the institution and prosecution of a certain action, all without notice to the state's attorney, or opportunity to be heard on the question whether he has refused or neglected to perform his duty, then the statute is manifestly unconstitutional. But, it will not be presumed that the legislature had any such intention, unless it has clearly expressed such intention in the law itself. The presumption is that the legislature intended that the removal proceeding which it prescribed should be in accordance with the principle of due process of law.[120]

In *Lattimore v. Vernor*[121] and *State ex rel. Thomas v. Henderson*,[122] the Oklahoma Supreme Court and the Ohio Supreme Court, respectively, held that an elected prosecutor was entitled to notice and a hearing prior to being involuntarily disqualified and having an attorney pro tem subsequently appointed in his place. Both courts so held in response to a trial judge who had appointed an attorney to assist a grand jury in criminally investigating the prosecutor. In both cases, the judge, on his own initiative, empaneled the grand jury and directed the jury to investigate the prosecutor.

### c. Contrasting *Matko*

Of the five cases just discussed, only *Matko* held that the elected prosecutor was not entitled to notice and a hearing prior to his disqualification. While *Matko* may appear to be inconsistent with the other cases' holdings, there are two critical facts in *Matko* that make its holding distinguishable, thus obviating any conflict with the other cases.

*Matko*, like *Lattimore* and *Vernor*, involved a prosecutor who was disqualified as a result of being the subject of a grand jury investigation. *Preissler* and *Ilvedson* each involved a prosecutor who was disqualified for allegedly failing to perform the duties of his office (i.e., refusing to prosecute a case).[123] The difference between these two grounds for disqualification, as we previously noted from *Preissler*, is that the question of whether a prosecutor should be disqualified for refusing to prosecute requires not only the "presentation of facts in order to enable the judge to reach an opinion on the mat-

---

**118.** *Id.*

**119.** *Id.* at 623–24.

**120.** *Id.* at 627 (citations omitted).

**121.** *Lattimore,* 288 P. at 464–65.

**122.** *State ex rel. Thomas,* 175 N.E. at 867.

**123.** *State ex rel. Preissler,* 260 S.E.2d at 287; *State ex rel. Ilvedson,* 291 N.W. at 622.

ter, but it also requires a charge that the prosecutor is avoiding or sidestepping the duties imposed on him by the Constitution and by his office." [124] The question of whether a prosecutor should be disqualified when he is the subject of a grand jury investigation, on the other hand, does not necessitate the "presentation of facts ... to enable the judge to reach an opinion," nor does it require a finding that the prosecutor is "sidestepping the duties imposed on him."

The reasoning behind this position—as viewed through the law of our state—is that even if the judge believed that the prosecutor had not committed wrongdoing, the judge's opinion would have no practical relevance because it does not provide a legally authorized basis for prohibiting the grand jury from investigating the prosecutor.[125] Additionally, the presentation of facts relating to whether the prosecutor actually committed wrongdoing is unnecessary because no evidentiary bar needs to be satisfied in order for a grand jury investigation to commence.[126] Lastly, as noted in *Preissler,* there is "no need for a hearing since [the prosecutor's status as a criminal defendant] inherently renders his prosecution of the case improper." [127]

The second key factual distinction in *Matko,* which is not present in any of the other cases, is that in *Matko:*

[I]t was *members of the grand jury* who approached the criminal court judge to request permission to investigate the elected prosecutor. Thus in *Matko,* the criminal court judge in no way initiated

the proceedings, nor did he aid, abet, or encourage any activities against the prosecutor *that were not forced upon him* by the entreaties of third parties.[128]

In *Preissler* and *Ilvedson,* the judge was not forced by the entreaties of third parties to disqualify the prosecutor. Furthermore, in *Lattimore* and *Thomas,* the judge was responsible for initiating the grand jury investigation against the prosecutor, thus singlehandedly creating the need and the basis for the prosecutor's disqualification. This is problematic because, as articulated in *Preissler,* "[t]o permit a judge to invoke the jurisdiction of his court *sua sponte* would place him in a position of a complainant deciding the merits of his own complaint in violation of the ancient homily of the law that no man may be a judge in his own case." [129]

## 2. Right to Notice and a Hearing Under Article 2.07

We hold that article 2.07 implicitly affords a district attorney the right to notice and a hearing before he is deemed disqualified to act in any case or proceeding. We further hold, however, that this right ceases to exist in situations like the one now before us, where: (1) a grand jury, on its own initiative, sought to investigate the district attorney for possible criminal wrongdoing; (2) the judge, upon being confronted with the grand jury's desire to investigate the district attorney, disqualified the district attorney from participating in the grand jury's investigation; and (3) the judge subsequently appointed

---

124. *Preissler,* 260 S.E.2d at 287.

125. *See Holmes,* 784 S.W.2d at 426 ("There is no provision requiring or even allowing a magistrate to restrict the process by which a legally constituted grand jury considers cases....").

126. *Supra* note 68.

127. *Preissler,* 260 S.E.2d at 286.

128. *State ex rel. Brown v. Merrifield,* 182 W.Va. 519, 389 S.E.2d 484, 486 (W.Va.1990) (first emphasis in original, second emphasis added).

129. *Preissler,* 260 S.E.2d at 285.

an attorney pro tem to assist the grand jury with its investigation. While our holdings are undeniably influenced by the out-of-state case law discussed herein, they are primarily predicated upon our observations of the law in this state.

■■■ While there are various means by which a district attorney may be lawfully restricted from performing, in whole or in part, the duties of his office, these means typically afford him with notice and a hearing. For instance, under our state constitution, a district judge cannot remove the district attorney for incompetency, official misconduct, or other causes defined by law, without the attorney being found guilty of the charges against him at the conclusion of a jury hearing.[130] Additionally, in cases where a criminal defendant files a pretrial motion to disqualify the district attorney from prosecuting a case against him, the motion may not be granted without the defendant proving at a hearing that there is a conflict of interest that rises to the level of a due process violation.[131] Even in instances in which the district attorney wishes to *voluntarily* recuse himself, article 2.07 demands that the district attorney seek approval from the judge by showing good cause for his recusal—a requirement that necessitates some basic level of communication and interaction between the judge and district

attorney prior to disqualification.[132] In light of all this, our conclusion that article 2.07 implicitly requires notice and a hearing is consistent with Texas law.[133]

This Court's decision to not extend the right to notice and a hearing to the instant case also finds support in the law of this state. The Texas Supreme Court has recognized that an elected county official is not always entitled to notice and a hearing *prior* to being restricted in the performance of his duties. In *Griner v. Thomas,* Thomas, a district judge, signed an order temporarily suspending Griner, a county judge, from office.[134] The temporary suspension was made pending the hearing of a petition for the removal of Griner from office. On appeal, Griner complained that if Thomas had the power to temporarily suspend him, he could not have done so without first affording him notice and a hearing, which were not provided.[135] The supreme court rejected this complaint, stating:

[I]t is argued that ... notice and a hearing should be required before a suspension is made. It is conceded that the statute does not, in terms, require notice, but it is insisted that it is essential to that due process of law without which no one may be deprived of his property, and that the requirement of it should therefore be read into the law. But

---

130. *See* Tex. Const. art. V, § 24.

131. *Hill,* 887 S.W.2d at 927.

132. Tex.Code Crim. Proc. Ann. art. 2.07(b–1) (Vernon 2005).

133. We note that affording a right to notice and a hearing benefits not only the district attorney, but the public as well:
[T]he prosecuting attorney is elected by the people of the county to represent them in prosecutions against criminal offenders. Consequently, the public has a right to know why the attorney they have selected to represent them and whose salary they

pay with their taxes, is unfit to prosecute a given case.... The court must provide every safeguard to insure the public that the business of the State is being properly conducted. A hearing on the record provides the public with an accurate record of the actions of their elected officials, upon which they may evaluate his performance. *Preissler,* 260 S.E.2d at 287.

134. *Griner v. Thomas,* 101 Tex. 36, 104 S.W. 1058, 1058 (1907).

135. *Id.* at 1060.

such a requirement would be inconsistent with the terms of the statute, which prescribes the only notice to be given, that of the final hearing, and authorizes the suspension at any time after the order therefor has been made. To hold that notice and a hearing were necessary before suspension would render the power futile. To the contention that suspension without notice is a deprivation of property without due process, the answer is that such property right in an office as the holder has is qualified by all pre-existing valid laws which provide for its suspension or termination, and, hence, the application of remedies so provided for does not unduly deprive him of any property.[136]

The petition for removal in *Griner* does not appear to operate any differently than the modern-day petition that is filed in accordance with chapter 87 of the local government code. Chapter 87 states that pending a county officer's trial, a "district judge may temporarily suspend the officer and may appoint another person to perform the duties of the office."[137] While a judge may suspend an officer, he may not do so until (1) "[a]fter the issuance of the

order requiring citation of the officer,"[138] and (2) after "the person appointed to serve executes a bond, with at least two good sufficient sureties, in an amount fixed by the judge and conditioned as required by the judge."[139] It is conceivable that both of these requirements can be fulfilled prior to the officer acquiring notice through his receipt of the citation and petition; therefore, chapter 87 does not appear to guarantee that the officer will receive notice prior to his suspension. Lastly, chapter 87 clearly does not guarantee the right to a hearing prior to suspension, for it contains no statute prescribing such a requirement.

One final notable aspect of *Griner* is the supreme court's response to "the contention that suspension without notice is a deprivation of property without due process." The supreme court's answer—"that such property right in an office as the holder has is qualified by all pre-existing valid laws which provide for its suspension or termination"—reflects the idea that an individual who accepts public office takes it *cum onere*,[140] that is, the individual "assumes the burdens and the obligations of

---

136. *Id.*

137. Tex. Loc. Gov't Code Ann. § 87.017(a) (Vernon 1999).

138. *Id.*

139. *Id.* at § 87.017(b).

140. The idea that an office is accepted *cum onere* was also reflected in *Trigg v. State*, 49 Tex. 645, 669 (1878). Trigg, an elected county attorney, appealed to the supreme court after he was removed from office upon being found guilty of habitual drunkenness and official misconduct. In discussing the constitutionality of Trigg's removal, the supreme court commented:

The office being elective, the qualified voters of the county have, by his election,

declared in favor of his fitness for the office in those respects; but the people of the whole State have declared, by this provision of the Constitution, that he is disqualified from holding the office, notwithstanding his election, if he is found, by the means thus provided, to be guilty of habitual drunkeness. His right to the franchise is thus made subject to that limitation; and the term of his office is thus subjected to a shorter period than the two years for which he was elected. He received the office subject to its being terminated, and his place being filled by another person, in the mode pointed out by the Constitution.

*Id.* While implicit in *Trigg* and *Griner*, the supreme court did explicitly express this idea in *Sparks v. State*, 42 Tex.Crim. 374, 60 S.W. 246, 247 (1900) ("The sheriff, when he undertook the duties of the office, assumed them voluntarily and cum onere.").

the office as well as its benefits, subjects himself to all constitutional and legislative provisions relating to the office, and undertakes to perform all the duties imposed on its occupant." [141]

There is nothing incredibly novel about this Court's decision that relator was not entitled to notice and a hearing prior to his disqualification. In light of *Griner*, we are clearly not the first court to find that a county officer can be lawfully impeded in the performance of his official duties without first receiving notice and a hearing. This finding, moreover, is a present reality with temporary suspensions under chapter 87. Lastly, we note that in holding that relator was not entitled to notice and a hearing, we have not acted in opposition to the holdings of any out-of-state cases discussed herein—a point that was fully developed earlier in this opinion by our discussion distinguishing *Matko*.

In the instant case, the grand jury notified respondent of its desire to investigate relator for possible criminal wrongdoing. Relator contends that, had he been afforded a hearing, he would have provided respondent with testimony and evidence to show that the grand jury's concerns were without merit. Even if we assume relator's contention is correct, it does not change the fact that respondent was nonetheless required to disqualify relator, given that: (1) relator's status as the subject of the investigation rendered his involvement in the investigation inherently improper; (2) respondent was not authorized to prohibit the investigation, even if she felt it was of questionable necessity; [142] (3) the grand jury was entitled, as expressed earlier in this opinion, to be assisted by an attorney that it could work with appropriately; and (4) respondent had an obligation to disqualify relator and appoint an attorney pro tem to secure the integrity of the grand jury system and the proper administration of justice. Only the grand jury could have terminated the commencement of its investigation, and whether or not relator is afforded the opportunity to address the grand jury is a matter that is decided by the jurors,[143] not by him.[144] Furthermore, any public benefit that could have derived from relator being afforded a hearing is negligible in this case, because any such benefit is trumped by the need to recognize the longstanding reasons for maintaining the secrecy of the grand jury's proceedings.[145]

---

**141.** *Preissler*, 260 S.E.2d at 286.

**142.** *See Holmes*, 784 S.W.2d at 426 ("There is no provision requiring or even allowing a magistrate to restrict the process by which a legally constituted grand jury considers cases. . . .").

**143.** *See* TEX.CODE CRIM. PROC. ANN. art. 20.10 (Vernon 2005) (stating that the grand jury foreman may issue a summons for any witness in the county, requiring the witness to appear).

**144.** *See Rogers v. State*, 774 S.W.2d 247, 262 (Tex.Crim.App.1989), *overruled on other grounds by Peek v. State*, 106 S.W.3d 72, 79 (Tex.Crim.App.2003) (stating that "the law does not entitle the subject of a criminal investigation to appear personally or by legal counsel before the grand jury conducting such investigation").

**145.** *In United States v. Procter & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), the United States Supreme Court listed the following reasons for grand jury secrecy:

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons

### 3. Conclusion

This Court holds that a district attorney is entitled to notice and a hearing prior to his disqualification under article 2.07, but also holds that the nature of relator's disqualification presents an exception to this general rule. We have interpreted article 2.07 in a manner we believe the law requires; accordingly, we further believe that relator has no proper basis for complaining that his right to his office has been unduly impeded by either respondent or this Court. Relator, after all, accepted the office of district attorney *cum onere.* His hold on the office is subject to the laws of this state which allow for his termination, suspension, *and* disqualification; the application of such laws evolves through the statutory interpretations provided by the courts of appeals of this state. Based on the interpretation of article 2.07 we espouse today, we find that respondent did not commit a clear abuse of discretion by failing to provide relator notice and a hearing.

### VIII. ISSUE FIVE: CAUSING DISTRICT ATTORNEY'S OFFICE TO CEASE ALL OPERATIONS

In his final issue, relator asserts that respondent's January 11 order constitutes a clear abuse of discretion because it has effectively placed the Willacy County District Attorney's Office in a state of disarray. To support this contention, relator primarily asserts that, as a result of the order, Garza was able to acquire the warrant that was ultimately utilized to seize computers and files within the district attorney's office, items which are essential to the office's continued operation. Relator requests that this Court quash the search warrant that was issued by Judge Leal, and order the return of the items seized.[146] Relator, however, has not equipped this Court with the pleadings, evidentiary record, and briefing needed to entertain such a request. We thus deny the relief requested.

 With regard to respondent, we do not believe the legality of her order should be predicated upon the impact the order may directly or indirectly have on the district attorney's office. The Texas Supreme Court's opinion in *Poe v. State*[147] largely reflects the basis for our belief. In *Poe,* a county sheriff was suspended by a district judge, pending a hearing on a petition for the sheriff's removal from office.[148] The sheriff was found guilty at the hearing and subsequently removed from office.[149] The sheriff then contested his removal on appeal. In addressing the judge's authority to suspend, the court commented:

> The suspension of an officer may be inconvenient and may even prove to be a great wrong to him. While the suspension is by the terms of the law only a temporary deprivation of the office, it in every case may be what it in effect was in this, a permanent deprivation of the office....
>
> ... The public interests as well as those of the office holder are to be re-

---

who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.
*Id.* at 681 n. 6, 78 S.Ct. 983.

**146.** We acknowledge that there is debate among the parties as to whether relator is actually being denied the return of the items

seized. Garza asserts that attempts have been made to returns items to relator, but that he has refused to accept the items.

**147.** *Poe v. State,* 72 Tex. 625, 10 S.W. 737 (1889).

**148.** *Id.* at 738.

**149.** *Id.* at 738–39.

garded. The law does not compel the district judges to suspend the officer, but entrusts them with the discretion to do it, as it in the like manner trusts their discretion in many other matters equally important. The safety of the public and every citizen is found in the judicious exercise of that discretion.[150]

In our case, the law, through article 2.07, afforded respondent the discretion to disqualify relator. While respondent's decision to disqualify has arguably inconvenienced the district attorney's office, we presume that her decision was made with the public and relator's best interests in mind. The law entrusts respondent with the safety of the public and every citizen, and despite the concerns expressed by relator, we cannot say that respondent has faltered in upholding this responsibility. Accordingly, we overrule this issue on appeal.

## IX. ISSUE SIX: FAILURE TO APPOINT A COMPETENT AND QUALIFIED ATTORNEY

Relator contends the trial court abused its discretion in appointing an individual who was not "competent" because he was not independent, unbiased, without conflicts of interest, was a witness on at least one of the concerns raised by the grand jury, and because his appointment would violate the incompatibility doctrine. Relator asserts that the standards for disqualification apply to attorneys pro tem, and further asserts that Garza was "disqualified" from acting as an attorney pro tem because, inter alia:

1) Judge Gustavo Garza is Relator's long time political opponent who has run against Relator on four separate occasions for the post of Willacy County District Attorney, and as late as the last election for district attorney in 2004;

2) There is a tremendous amount of animosity between Relator and Judge Gustavo Garza such that it has resulted in a physical altercation between the two on at least one occasion ...

3) Judge Gustavo Garza is the court appointed contract attorney who has been hired to represent most of the indigent defendants who have criminal cases pending in said court ...

4) Judge Gustavo Garza is a sitting Justice of the Peace and, therefore, is disqualified from serving as an attorney pro tem (acting district attorney) due to the constitutional prohibition that no person may serve in both the judicial and executive offices at the same time, under the doctrine of incompatibility of public offices ...

5) Judge Gustavo Garza is a witness to one of the 'concerns' raised by the Grand Jury of the 197th District Court ... [that is,] 'voter fraud committed by the District Attorney, Juan Angel Guerra during the election of March 2004,' in that Judge Gustavo Garza was a candidate for district attorney opposing Relator during that same election.

 Relator's arguments focus on (1) Garza's "competence" under article 2.07 of the code of criminal procedure, and (2) the general standards for disqualification of an attorney. We apply, in general, an abuse of discretion standard to the trial court's appointment of an attorney pro tem.[151]

### 1. "Competent Attorney"

---

**150.** *Id.* at 740.

**151.** *Shea v. State,* 167 S.W.3d 98, 101–02 (Tex.App.-Waco 2005, pet. ref'd); cf. *Loshe v. State,* 160 Tex.Crim. 561, 566, 272 S.W.2d 517, 520 (1954) (op. on reh'g) (applying abuse of discretion standard to review appearance of "volunteer" special prosecutor).

Article 2.07(a) states that a "judge ... may appoint any *competent* attorney to perform the duties of the office during the absence or disqualification of the attorney for the state."[152] When the appointment of an attorney pro tem is necessary under article 2.07, the decision of whom to appoint lies within the discretion of the trial court."[153] The only limitation imposed by the statute is that the court appoint a "competent attorney" to serve.[154] The statute, however, does not define that term.

The Waco Court of Appeals is the only court that has attempted to bring meaning to the term "competent" within article 2.07(a).[155] In *Shea v. State*, the Waco court addressed Shea's claim that the trial court had failed to appoint a "competent attorney" because the attorney pro tem was serving a federal probation for misprision of a felony.[156] The court used *Webster's Dictionary* to define the term "competent" as meaning "legally qualified or adequate."[157] The court then overruled appellant's claim, finding that Shea had presented no evidence that the attorney pro tem's license had been suspended or that he was not otherwise a "member in good standing" with the State Bar.[158]

While we take no issue with the treatment given to the term "competent" in *Shea,* we do question whether the term actually holds any significant consequence. If, for example, we were to assume that the term "competent" was not in article 2.07, it is conceivable that Shea's claim could still be asserted through the term "attorney." For instance, a state could hardly claim to satisfy an accused's sixth amendment right "to have the assistance of counsel for his defense"[159] if the state provided the accused with an attorney that could not legally practice in the court in which the accused was to be tried. The state could not justify this action on the basis that the sixth amendment does not explicitly afford the right to *"competent* counsel." With that said, the meaning of the term "attorney" in article 2.07 should not be construed any less significantly.

This Court does not believe the term "competent attorney" in article 2.07 holds any more meaningful significance than it does in section 6.30(c) of the Texas Tax Code[160] or rule 8 of the Texas Rules Governing Bar Admission.[161] The placement of the term "competent" in article 2.07, at most, serves to advise the court that it should appoint an attorney that has some knowledge of the law with which he will be

---

**152.** Tex.Code Crim. Proc. Ann. art. 2.07(a) (Vernon 2005) (emphasis added).

**153.** *See Shea v. State,* 167 S.W.3d 98, 101 (Tex.App.-Waco 2005, pet. ref'd).

**154.** Tex.Code Crim. Proc. Ann. art. 2.07(a) (Vernon 2005).

**155.** *See Shea,* 167 S.W.3d at 101.

**156.** *Id.*

**157.** *Id.*

**158.** *Id.* at 102.

**159.** U.S. Const. amend. VI.

**160.** Tex. Tax Code Ann. § 6.30(c) (Vernon 2001) ("The governing body of a taxing unit may contract with any *competent attorney* to represent the unit to enforce the collection of delinquent taxes.") (emphasis added).

**161.** Tex.R. Govern. Bar Adm'n XIII(b)(2)(D) (2006) (West 2007) ("'[A] foreign nation attorney who has not completed the law study under these Rules is eligible for an exemption from the law study requirement ... if the attorney demonstrates to the Board that the law of such foreign nation is sufficiently comparable to the law of Texas that, in the judgment of the Board, it enables the foreign attorney to become a *competent attorney* in Texas without additional formal legal education ....'") (emphasis added).

dealing. Relator's factual allegations under this issue do not attack Garza's legal qualifications as an attorney or his adequacy as an attorney in general, and accordingly, we conclude that Garza is "competent" to serve as an attorney pro tem under article 2.07.

## 2. Disqualification

■■■ Relator's remaining arguments under this issue urge that Garza is disqualified to serve as attorney pro tem. It is clear that attorneys pro tem are subject to disqualification in the same manner as district attorneys.[162] A prosecutor is appointed solely to pursue the public interest, and a private attorney appointed to prosecute should be as disinterested as a public prosecutor.[163] We will address relator's arguments *seriatim.*

### a. Practicing Criminal Defense Counsel

■■ Relator asserts that Garza should not be attorney pro tem because he is currently acting as criminal defense counsel in Willacy County. This matter was somewhat addressed in an opinion from the Texas Attorney General's Office.[164] The opinion addressed whether article 2.08 of the code of criminal procedure disqualified a county attorney pro tem from acting as criminal defense counsel in an adjoining county. Article 2.08 prohibits district and county attorneys from appearing "of counsel adversely to the State in any case, in any court."[165] The stricture prevents the

district and county attorney from representing a party adverse to the State in any court in the State; representing a criminal defendant constitutes being "of counsel adversely to the State."[166]

Confronted with the question of whether article 2.08 also applies to an attorney appointed as a county or district attorney pro tem, the attorney general's office stated:

By its plain terms, article 2.08 disqualifies district and county attorneys, *i.e.,* constitutional district and county attorneys, from acting as counsel adversely to the state in any court. Attorneys appointed pro tem to perform the duties of a county or district attorney are not included. Although the Legislature could have written article 2.08 to also apply to an attorney appointed pro tem, it did not do so. We may "add words into a statutory provision only when necessary to give effect to clear legislative intent." Moreover, we may consider the consequences of a particular construction and will presume a feasible result was intended. If an attorney who accepts even one pro tem appointment for a single case cannot engage in criminal defense in any court in the state, then article 2.08 would effectively exclude the most qualified private attorneys—those with an ongoing defense practice—from accepting any pro tem appointments. Consequently, we conclude that article 2.08 applies to county attorneys under

**162.** *See, e.g., Scarborough,* 54 S.W.3d at 424–25

**163.** *See Young v. U.S. ex rel. Vuitton Et Fils S.A.,* 481 U.S. 787, 804, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987); *Crowe v. Smith,* 151 F.3d 217, 227 (5th Cir.1998); *Pirtle,* 887 S.W.2d at 944 (dissenting opinion by Baird, J.).

**164.** Op. Tex. Att'y Gen. No. GA–0241 (2004).

**165.** Tex Code Crim. Proc. Ann. art. 2.08 (Vernon 2005) ("District and county attorneys shall not be of counsel adversely to the State in any case, in any court, nor shall they, after they cease to be such officers, be of counsel adversely to the State in any case in which they have been of counsel for the State.").

**166.** *Ex parte Ramsey,* 642 S.W.2d 483, 484 (Tex.Crim.App.1982).

the constitution, but not to attorneys appointed to perform the duties of the office pro tem.[167]

This reasoning admittedly addresses a different circumstance from the one before us. The opinion dealt with an individual who did not act as an attorney pro tem and a criminal defense counsel in the same county. This is a distinction from the case before us—a distinction that is made more significant by the fact that our attorney pro tem is investigating a district attorney, and as a result, can potentially take control of sensitive information that pertains to cases he is working on as a criminal defense counsel. Despite the distinction, however, we believe the attorney general's reasoning can be adequately applied to the instant case.

Article 2.07 states that a judge can appoint "*any* competent attorney."[168] The statute contains no wording from which one can derive the interpretation that a judge cannot appoint a criminal defense counsel who is practicing in the same county. Although the Legislature could have written appointment restrictions into article 2.07(a), it did not do so. Furthermore, while this Court may question, in light of the concerns expressed in the preceding paragraph, whether it was a good idea to appoint Garza for the purpose of investigating relator, we cannot say that respondent committed a clear abuse of discretion.[169]

### b. Justice of the Peace

 Relator contends that Garza is legally incompetent to act as attorney pro tem because he is a justice of the peace, and he may not hold two offices that are incompatible. Under the common law, one person cannot simultaneously hold two incompatible offices, and the general rule is that the acceptance and qualification for a second office incompatible with the first office is an implied resignation of the first office.[170] In determining incompatibility, the crucial question is whether the occupancy of both offices by the same person is detrimental to the public interest or whether the performance of the duties of one interferes with the performance of those of the other.[171]

Assuming that an attorney pro tem assumes an "office," we fail to see how Garza's appointment as attorney pro tem conflicts with his position as justice of the peace. We first note that Garza is an attorney pro tem serving Willacy County, while he is a justice of the peace in Cameron County. Second, relator has not demonstrated how Garza's fulfillment of these two positions will be detrimental to the public interest or how the performance of his duties as justice of the peace will interfere in any way with his duties as attorney pro tem. Accordingly, this Court fails to see any error on the part of respondent on this basis.

### c. Animosity, Bias, and Conflicting Interests

Relator also argues that Garza was disqualified as an attorney pro tem because Garza was "not independent, unbiased, without conflicts of interest," and he was a witness to one of the concerns raised by

---

167. Op. Tex. Att'y Gen. No. GA–0241 at *10–11 (2004) (citations omitted).

168. TEX.CODE CRIM. PROC. ANN. art. 2.07(a) (Vernon 2005) (emphasis added).

169. "The relator must establish that the trial court could reasonably have reached only one decision. Even if the reviewing court would

have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *Walker*, 827 S.W.2d at 839 (citations omitted).

170. *Hill*, 887 S.W.2d at 930.

171. *Id.*

the grand jury. According to relator, Garza has been relator's "long time political opponent who has run against relator on four separate occasions for the post of Willacy County District Attorney, and as late as the last election for district attorney in 2004."[172] Relator further asserts that "there is a tremendous amount of animosity between relator and Judge Gustavo Garza such that it has resulted in a physical altercation between the two on at least one occasion." Relator also points out that Garza was a candidate for district attorney in the same election in which, as attorney pro tem, he was investigating relator for "voter fraud." Relator argues that Garza's service as attorney pro tem raises questions about the integrity of the criminal process and creates an appearance of impropriety.[173]

The absence of an impartial and disinterested prosecutor has been held to violate a criminal defendant's due process right to a fundamentally fair trial.[174] Put another way, the due process rights of a criminal defendant are violated when a prosecuting attorney who has a conflict of interest relevant to the defendant's case prosecutes the defendant. It is clear; however, that the trial court may not disqualify a district attorney or his staff on the basis of a conflict of interest that does not rise to the level of a due-process violation.[175]

The question whether there is a conflict of interest is dependent upon the circumstances of the individual case. Because there is no bright-line rule for determining whether a conflict rises to the level of a due-process violation, each case must be analyzed on the facts peculiar to it. As the United States Supreme Court has explained:

Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." Rather, the phrase expresses the requirement of "fundamental fairness," a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise [that] must discover what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by

172. We would note that the 1992 election for Willacy County Attorney, wherein Garza and Guerra were opponents, resulted in an election contest which was appealed to this Court. *See Guerra v. Garza,* 865 S.W.2d 573 (Tex. App.-Corpus Christi 1993, writ dism'd w.o.j.). In that case, Guerra, the Democratic Party nominee, sued Garza, a write-in candidate, contesting the canvass results of the general election which declared Garza the winner. *See id.* at 574. Guerra alleged that Garza and his workers conspired to obtain votes and defraud the voters of Willacy County by committing multiple violations of the Texas Election Code. *See id.* After a bench trial, the trial court denied Guerra's contest and declared Garza the winner. *Id.* This Court reversed the judgment and remanded the case to the trial court with instructions to open the ballot boxes and recount the ballots in a manner consistent with our opinion. *See id.* at 579.

173. Garza himself acknowledged the potential for an appearance of impropriety in his service as an attorney pro tem in the instant case. Accordingly, Garza associated an assistant attorney pro tem to prosecute the trial of any case against relator and planned not to participate in the trial himself.

174. *Ganger v. Peyton,* 379 F.2d 709, 714 (4th Cir.1967) (conviction violated fundamental fairness assured by due process clause when part-time commonwealth attorney suffered impermissible conflict of interest by prosecuting defendant for criminal assault while simultaneously representing defendant's wife in divorce action).

175. *Pirtle,* 887 S.W.2d at 927; *Eidson,* 793 S.W.2d at 6; *Goodman,* 210 S.W.3d at 808; *Fluellen v. State,* 104 S.W.3d 152, 161 (Tex. App.-Texarkana 2003, no pet.).

assessing the several interests that are at stake.[176]

The burden is on the party seeking disqualification of the prosecutor to present evidence establishing the existence of disqualifying bias or prejudice.[177] Mere allegations of wrongdoing will not suffice.[178]

The issue of what constitutes an "impartial" prosecutor requires explanation. A prosecutor is not "partial" simply because he zealously seeks a conviction. Rather, "partiality" in this context is similar to a conflict of interest in the sense that the prosecutor has a personal interest or stake in the outcome of the criminal prosecution. Thus, "partiality" refers not to personal zeal but to a situation where the personal interests of the prosecutor generate a structural conflict of interest.[179] That is to say, a prosecutor's personal interest or partiality may present "an actual conflict of interest if its potential for misconduct is deemed intolerable."[180]

▇▇▇ In this regard, we would note that courts have observed that "the zeal of the prosecutor who covets higher office or who has a personal political axe to grind may well exceed the zeal of" a prosecutor who has more limited ambitions.[181] Nevertheless, a prosecutor's political ambitions alone are not enough to support a finding that a prosecutor is not sufficiently disinterested.[182] Furthermore, Texas case law clearly shows that a mere potential or perceived conflict of interest is not sufficient to warrant disqualification.[183] We do not lightly disrupt the orderly prosecution of those who have committed crimes against the State and her citizens.

▇▇▇ A prosecutor's "primary duty" is "not to convict, but to see that justice is done."[184] In this regard, any interest that is inconsistent with the prosecutor's duty to see that justice is done is a conflict that could potentially violate a defendant's right to fundamental fairness. For example, if a prosecutor has a financial stake in the outcome of a prosecution, the conflict between that interest and the duties of the public office clearly presents constitutional

---

176. *Lassiter v. Dept. of Soc. Servs.*, 452 U.S. 18, 24–25, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)).

177. *See Hill*, 887 S.W.2d at 927; *Reed*, 503 S.W.2d at 776; *Canady v. State*, 100 S.W.3d 28, 32 (Tex.App.-Waco 2002, no pet.).

178. *See Spears v. Fourth Court of Appeals*, 797 S.W.2d at 656; *State ex rel. Hilbig v. McDonald*, 877 S.W.2d 469, 472 (Tex.App.-San Antonio 1994, no pet.).

179. *See Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807–08 and n. 18, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987); *Polo Fashions v. Stock Buyers Intern.*, 760 F.2d 698, 705 (6th Cir.1985); *New Jersey v. Imperiale*, 773 F.Supp. 747, 750 (D.N.J.1991).

180. *Young*, 481 U.S. at 807 n. 18, 107 S.Ct. 2124.

181. *Dick v. Scroggy*, 882 F.2d 192, 196 (6th Cir.1989).

182. *Id.*, *Wright v. United States*, 732 F.2d 1048, 1055 (2d Cir.1984); *Azzone v. United States*, 341 F.2d 417, 419 (8th Cir.1965).

183. *See Hanley v. State*, 921 S.W.2d 904, 909–10 (Tex.App.-Waco 1996, pet. ref'd) (holding that the defendant could not disqualify the district attorney on the grounds that the prosecutor had a "prejudice" and "predisposition" against him without proving that his allegations rose to the level of a due process violation); *Offermann v. State*, 742 S.W.2d 875, 876 (Tex.App.-San Antonio, 1987, no writ) (holding that defendant could not disqualify the district attorney on the grounds that the prosecutor harbored a "personal grudge" against him because defendant failed to establish any harm as a result of the alleged "grudge").

184. Tex.Code Crim. Proc. Ann. art. 2.01 (Vernon 2005).

concerns.[185] Additionally, a prosecutor's potential access to or use of confidential information obtained through prior representation of the defendant could undermine the fairness of the prosecution.[186] Moreover, a conflict arising from a prosecutor's non-economic, personal interest in the case can violate a defendant's right to due process.[187] For example, certain violations of the election code can give rise to causes of action for monetary damages to the opposing candidate in a race.[188]

■ In this context, relator's complaints that it was improper to appoint Garza to investigate voter fraud in an election which he lost are of significant concern. Garza knew, when he drafted the order appointing himself as attorney pro tem, that one of the allegations against relator involved election fraud, specifically "voter fraud committed by the District Attorney, Juan Angel Guerra during the election of March 2004." Garza was relator's opponent in that election. Accordingly, there is a potential conflict between

Garza's direct personal interest in the results of the criminal investigation of these charges and Garza's duty to see that justice is done. A prosecutor should not be subject to influences that undermine confidence that the prosecution can be conducted in a disinterested fashion. We cannot have confidence in a proceeding in which an interested prosecutor plays the critical role of preparing and presenting the case for the defendant's guilt. We believe, under these circumstances, relator has been or will be prejudiced by this conflict, and such conflict rises to the level of a due process violation.

### d. Prosecutor Serving as a Witness

Relator contends that Garza's status as a candidate in the election in which relator is accused of voter fraud "makes [relator] a witness." In determining whether counsel should be disqualified because counsel is a potential witness, Texas courts use rule 3.08 of the Texas disciplinary rules of professional conduct as a guideline.[189] The

---

185. *See, e.g., Ganger v. Peyton,* 379 F.2d 709, 712–13 (4th Cir.1967).

186. *See, e.g., Goodman,* 210 S.W.3d at 810.

187. *See Commonwealth v. Balenger,* 704 A.2d 1385, 1386 (Pa.Super.1997) (granting a new trial where the prosecutor was involved in a romantic relationship with the defendant's wife), appeal denied 556 Pa. 670, 727 A.2d 126, 1998 WL 1013652 (Pa.1998).

188. *See, e.g., Osterberg v. Peca,* 12 S.W.3d 31, 36 (Tex.2000); *Ragsdale v. Progressive Voters League,* 790 S.W.2d 77, 84 (Tex.App.-Dallas) ("The enforcement of this remedy is the essence of the statute and promotes compliance with the provisions of the Code, especially those that proscribe certain acts as being unlawful."), *aff'd in part and rev'd in part on other grounds,* 801 S.W.2d 880 (Tex.1990).

189. Tex. Disciplinary R. Prof'l Conduct 3.08; *Gonzalez v. State,* 117 S.W.3d 831, 838 (Tex. Crim.App.2003); *House v. State,* 947 S.W.2d 251, 252–53 (Tex.Crim.App.1997). Rule 3.08

of the Texas Disciplinary Rules of Professional Conduct provides, in part:
 (a) A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless:
 (1) the testimony relates to an uncontested issue;
 (2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;
 (3) the testimony relates to the nature and value of legal services rendered in the case;
 (4) the lawyer is a party to the action and is appearing pro se; or
 (5) the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work substantial hardship on the client.
 (b) A lawyer shall not continue as an advocate in a pending adjudicatory proceeding

rule does not present the disqualification standard, but does provide considerations relevant to the determination.[190]

■■■■ Counsel may be disqualified under the disciplinary rules when the opposing party can demonstrate actual prejudice resulting from opposing counsel's service in the dual role of advocate-witness.[191] Allegations of one or more violations of the disciplinary rules or evidence showing only a possible future violation are not sufficient.[192] Moreover, the party seeking disqualification cannot invite the necessary actual prejudice by unnecessarily calling the opposing counsel as a witness.[193]

Although mere allegations of a possible future violation of a disciplinary rule are not sufficient for the purposes of disqualification; the issue of disqualification can be determined early in the trial process despite the fact that "some speculation is involved."[194] Considering the issue of disqualification early in the trial process can avoid actual prejudice resulting from the opponent's service in dual roles and prevent a situation in which the opponent would experience substantial hardship if counsel were disqualified.[195] In such instances, however, the speculation cannot be unsupported or dubious.[196]

■■■ We agree that Garza could be a material fact witness, if not the actual complainant, regarding the allegations under investigation. In the instant case, we perceive a very real probability that Garza would be called upon to testify regarding the alleged election fraud. Garza could be a material fact witness, and would be in fact the injured party if the allegations of election fraud were substantiated. If Garza were to testify, the confusion that would most likely result from Garza's multiple roles as prosecutor, witness, and interested party would substantially affect the jury's verdict.[197]

### e. Conclusion

■■■■ For the above reasons described in subsections "IX.c" and "IX.d" herein, under the facts of this case, we hold that respondent abused her discretion in appointing Garza as attorney pro tem.[198]

---

if the lawyer believes that the lawyer will be compelled to furnish testimony that will be substantially adverse to the lawyer's client, unless the client consents after full disclosure.

190. *Gonzalez*, 117 S.W.3d at 838.

191. *Id.; House*, 947 S.W.2d at 252; *Brown v. State*, 921 S.W.2d 227 (Tex.Crim.App.1996).

192. *Gonzalez*, 117 S.W.3d at 838.

193. *See id.*

194. *See id.* at 844.

195. *See id.*

196. *Id.*

197. *See* Tex. Disciplinary R. Prof'l Conduct 3.08, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 2005) (Tex. State Bar R. art. X, § 9); *see Powers v. State*, 165

S.W.3d 357, 358 (Tex.Crim.App.2005) ("an ethics rule may be relied upon to show that an alleged violation infringed the complaining party's right to a fair trial or otherwise affecting substantial rights;" however, "a complaining party's right is not grounded in the disciplinary rule itself.").

198. The dissenting opinion contends that the competence or disqualification of Garza is a moot issue. The general rule is that a case becomes moot, and thus unreviewable, when it appears that one seeks to obtain relief on some alleged controversy when in reality none exists, or on some matter which, when granted, cannot have any practical legal effect on a then-existing controversy. *See Tex. Dep't of Public Safety v. LaFleur*, 32 S.W.3d 911, 913–14 (Tex.App.-Texarkana 2000, no pet.). We do not agree that this issue is moot.

We conclude that the "capable of repetition yet evading review" exception to the mootness doctrine applies because the challenged

Accordingly, we will conditionally issue mandamus relief with respect to relator's fourth issue.

## X. CONTEMPT AND SANCTIONS

### 1. Motion for Contempt

 Contempt of court is broadly defined as disobedience to or disrespect of a court by acting in opposition to its authority.[199] Within this definition, there are two types of contempt: direct contempt and constructive contempt.[200] Direct contempt is that type of disobedience or disrespect which occurs within the presence of the court, while constructive contempt occurs outside the court's presence. The contempt alleged in this case, violation of a written court order, outside the presence of the court, is constructive contempt. A finding of contempt for disobedience to a court order requires proof beyond a reasonable doubt of: (1) a reasonably specific order; (2) a violation of the order; and (3) the willful intent to violate the order.[201]

 Relator filed an unverified motion for contempt with this Court,[202] alleging that respondent and Garza had violated

---

act, that is, the appointment of an attorney pro tem, is of such short duration that relator cannot obtain review before the issue becomes moot, and there is a reasonable expectation that the same action will occur again if the issue is not considered. *See Blum v. Lanier,* 997 S.W.2d 259, 264 (Tex.1999).

We further conclude that the "public interest" exception to the mootness doctrine also applies. This is an issue of considerable public importance and the issue is capable of repetition between either the same parties or other members of the public. *See Ngo v. Ngo,* 133 S.W.3d 688, 692 (Tex.App.-Corpus Christi 2003, no pet.). The Texas Supreme Court has not yet recognized the public interest exception to the mootness doctrine and the intermediate appellate courts are not in unanimity regarding its availability, but this Court has specifically recognized this exception, as have several of our sister courts. *Ngo,* 133 S.W.3d at 692; *see FDIC v. Nueces County,* 886 S.W.2d 766, 767 (Tex.1994) ("This Court has not previously decided the viability of the public interest exception, and we find it unnecessary to reach that issue here."); *Houston Chronicle Pub. Co. v. Thomas,* 196 S.W.3d 396, 399–400 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (noting split among courts regarding availability of the public interest exception); *State ex rel. Cockerham v. Cockerham,* 218 S.W.3d 298, 302 (Tex.App.-Texarkana 2007, no pet.) (recognizing public interest exception to the mootness doctrine); *In re Guardianship of Keller,* 171 S.W.3d 498, 501 (Tex.App.-Waco 2005), *rev'd on other grounds, Zipp v. Wuemling,* 218 S.W.3d 71 (Tex.2007) (same); *Securtec, Inc. v. County of Gregg,* 106 S.W.3d 803, 810–11

(Tex.App.-Texarkana 2003, pet. denied) (same); *Univ. Interscholastic League v. Buchanan,* 848 S.W.2d 298, 304 (Tex.App.-Austin 1993, no pet.) (same).

Finally, we would note that, on September 11, 2007, relator filed a "motion for contempt and/or motion for mandamus and/or equitable relief or in the alternative, motion for stay," supported by affidavit, in which he contends that respondent and Garza have been meeting privately with a new grand jury in relator's absence and he "is concerned that without this Court of Appeals' intervention, with this new grand jury, under the direction of [respondent] and the illegal participation of ... Garza, Relator will once again find himself being investigated, indicted and arrested." Accordingly, based on the record as a whole and this recent motion, we conclude that the issues herein are vital and continuing in nature.

199. *Ex parte Chambers,* 898 S.W.2d 257, 259 (Tex.1995).

200. *Id.*

201. *Id.*

202. Motions for contempt are typically verified; however, an unverified motion is acceptable unless a relevant statute provides otherwise. *See, e.g., Ex parte Winfree,* 153 Tex. 12, 263 S.W.2d 154, 156–58 (1953) (verification not jurisdictional); *see also Ex parte Hall,* 611 S.W.2d 459, 460 (Tex.Civ.App.-Dallas 1980, orig. proceeding) (instituting contempt proceeding on unsworn complaint does not violate due process).

this Court's March 15 stay order—which stayed the January 17 order appointing Garza as attorney pro tem—by meeting with the grand jury on March 21 for the purpose of handing down indictments against relator. This Court was mindful of the seriousness of charging a sitting judge with contempt. A judge's "refusal to obey the direct order of a superior court threatens the very integrity and continued validity of the State judicial system."[203] Accordingly, we scheduled a show cause hearing to ascertain the validity of relator's allegation.[204]

 Prior to the show cause hearing, respondent and Garza filed motions to dismiss relator's motion for contempt. Respondent's motion asserts that she "did not direct the Grand Jury of Willacy County to meet on March 21, 2007 and issue true bills against Relator." Garza, in his motion, similarly asserts that he "did not directly or indirectly recommend, request or direct the [grand jury] to meet on March 21, 2007 and/or to issue indictments against [relator]." Their assertions were later supported at the show cause hearing through their own testimony, as well as the testimony of the grand jury foreperson.[205] No contradictory testimony or evidence was presented. Therefore, because the evidence before us does not show beyond a reasonable doubt that respondent and Garza violated the stay order by meeting with the grand jury on March 21, 2007, we do not find respondent or Garza in contempt of this Court.[206]

## 2. Motions for Sanctions

 Respondent and Garza have each requested that this Court sanction relator for the filing of his motion for contempt. Rule 52.11 of the Texas Rules of Appellate Procedure states:

> On motion of any party or on its own initiative, the court may—after notice and a reasonable opportunity to respond—impose just sanctions on a party or attorney who is not acting in good faith as indicated by any of the following:
>
> (a) filing a petition that is clearly groundless;
>
> (b) bringing the petition solely for delay of an underlying proceeding;
>
> (c) grossly misstating or omitting an obviously important and material fact in the petition or response; or

---

**203.** *In re Reed,* 901 S.W.2d 604, 608 (Tex. App.-San Antonio 1995, orig. proceeding).

**204.** The court of appeals has the authority to conduct its own evidentiary hearing on a contempt allegation or it may refer the matter of taking testimony and hearing evidence to a district court. *In re Reed,* 901 S.W.2d at 610 (citing *Ex parte Werblud,* 536 S.W.2d 542, 544–45 (Tex.1976)). The supreme court prefers the latter course of action. *Id.* In this case, however, because the alleged contemnor is a sitting judge, there is no obviously appropriate district court to whom the case could have been referred. *See id.*

**205.** The grand jury foreperson testified that the grand jury decided, on its own initiative, to meet at the Willacy County Sheriff's Office in the evening of March 21, 2007. On this day, the foreperson contacted the official court reporter for the 197th Judicial District Court and arranged for the reporter to meet the grand jury at the sheriff's office. According to the foreperson, only the court reporter and the twelve grand jurors were present while proceedings were being conducted by the grand jury; these proceedings were under the sole direction of the foreperson and the assistant foreperson.

**206.** Because due process forbids the assessment of punishment for acts not brought to the alleged contemnor's attention before the hearing, this Court's contempt inquiry is limited to the sole allegation raised in relator's motion for contempt. *Ex parte Swate,* 922 S.W.2d 122, 124 (Tex.1996); *Ex parte Parr,* 505 S.W.2d 242, 245–46 (Tex.1974).

(d) filing an appendix or record that is clearly misleading because of the omission of obviously important and material evidence or documents.[207]

In the instant case, respondent and Garza seemingly assert that relator should be sanctioned for "grossly misstating" that they were with the grand jury on March 21—"an obviously important and material fact."

Though the evidence at the show cause hearing failed to support relator's allegation, it also failed to show that relator had not acted in good faith. A lack of good faith would be more evident if the evidence indicated that relator knew that his allegation was false and failed to take appropriate measures to apprise the Court of that fact. However, relator's counsel asserted at the hearing that he and relator did not learn that the allegation was called into question until respondent and Garza filed responses to the motion for contempt a day before the show cause hearing was scheduled to commence. Therefore, after carefully considering respondent and Garza's motions for sanctions, we find that both motions should be denied.

### 3. Costs

The Court incurred extraordinary costs of $2,210.90 and $1,016.20 in developing the evidentiary record necessary to resolve the foregoing motion for contempt and motions for sanctions. Given our disposition of the motion for contempt and motions for sanctions, the Court hereby assesses these costs against relator and Garza equally. We order these parties to pay such costs directly to this Court within thirty days of the date of this opinion. The Clerk of the Court is directed to forward the bills underlying these costs to the parties upon request.

207. Tex R. App. P. 52.11.

### XI. Conclusion

Issues one through five are overruled. We conditionally grant mandamus relief to vacate the improper past appointment of Garza as attorney pro tem due to Garza's conflict of interest in serving as attorney pro tem and the probability that Garza would have been a witness against relator had he been prosecuted for "voter fraud." The writ will issue only if the trial court fails to act in accordance with this opinion. Any pending motions filed in this cause and not specifically addressed herein are dismissed as moot.

In so ruling, we do not address any related issues regarding the future development of this case, or what actions will be appropriate in light of Garza's removal as attorney pro tem. Such matters shall be presented to Judge Bañales for his consideration and ruling as an initial prerequisite for our further review, if any is indeed necessary.

Dissenting Opinion by Justice BENAVIDES.

BENAVIDES, Justice, dissenting.

### I. Introduction

For the most part, the majority has crafted an eloquent opinion that is thoroughly researched and painstakingly explained. Reading Parts I–XIV, and noting its delicate and careful consideration of all relevant law, including out-of-state law, one would assume that the majority would continue its deliberate and solidly supported analysis through to the end. Surprisingly, and to my great disappointment, the sturdy foundation on which the majority opinion stands collapses at Part IX, subparts 2.c, 2.d, and 2.e of the opinion, in which the majority ultimately finds Garza disqualified to serve as attorney pro tem.

In doing so, the majority glosses over the Court's lack of jurisdiction, ignores the deficiencies in the record, and fails to adhere to its own previous analysis.

I join Parts I–VIII; Part IX subparts 1, 2.a, and 2.b; and Part X subparts 1 and 2 because those sections correctly state the applicable law and properly apply that law. However, I disagree with the majority's decision to conditionally grant mandamus relief and to assess costs against Garza. I would deny the petition for writ of mandamus and assess all costs against Guerra. Accordingly, and as set out fully below, I respectfully dissent.

## II. DISCUSSION

The majority grants relief on two grounds, both apparently arising from Garza's status as Guerra's former political opponent. Garza was a candidate who ran for election against Guerra in 2004. This was the same election referred to in the January 17 order issued by Judge Lopez, which stated, "The Grand Jury was aware of voter fraud committed by the District Attorney, Juan Angel Guerra during the election of March 2004."

The majority first finds that Garza's appointment violates Guerra's due process rights because Garza has an allegedly impermissible conflict of interest. Second, the majority grants relief because it finds

that Garza *could be* a material fact witness. I disagree with both holdings.

## A. These issues are now moot.

Guerra was never indicted for a criminal offense arising out of his participation in the March 2004 election. With the grand jury's term now expired, Garza can no longer assist in the investigation or prosecution of Guerra's election conduct. Thus, while purporting to conditionally grant mandamus relief, the majority's opinion is a dog without a bite—the issues on which the majority grants relief are no longer part of the proceedings below.[1] Garza has no "interest" in the outcome of a voter fraud prosecution because there is no longer a voter fraud prosecution. Furthermore, and obviously, Garza cannot be called to testify because no prosecution for voter fraud can proceed under the January 17 order.

Although the majority briefly describes this Court's constitutionally mandated jurisdictional requirements,[2] the opinion fails to explain how the order granting relief will have any discernible effect on the prosecution below.[3] Presumably, the majority essentially ignores this defect in the opinion because it recognizes that we cannot "go behind the indictment" to determine whether Garza's status as Guerra's former election opponent somehow tainted the indictments that were actually returned.[4] Moreover, on this record, we

---

1. *See Davis v. State,* 463 S.W.2d 434, 436 (Tex.Crim.App.1971) (rejecting as moot challenge to second paragraph of indictment where State did not present that paragraph to the jury); *Rojas v. State,* 662 S.W.2d 466, 467 (Tex.App.-Corpus Christi 1983, pet. ref'd) (holding defendant's challenge to State's indictment as alleging multiple felonies was moot, given that only one count was presented to jury).

2. *Patterson v. Planned Parenthood,* 971 S.W.2d 439, 442 (Tex.1998) ("The constitutional roots of justiciability doctrines such as ripeness, as well as standing and mootness,

lie in the prohibition on advisory opinions, which in turn stems from the separation of powers doctrine.").

3. *See* majority opinion note 198 (citing *Tex. Dep't of Public Safety v. LaFleur,* 32 S.W.3d 911, 913–14 (Tex.App.-Texarkana 2000, no pet.)).

4. *See Dean v. State,* 749 S.W.2d 80, 82 (Tex. Crim.App.1988); *DeBlanc v. State,* 799 S.W.2d 701, 706 (Tex.Crim.App.1990); *Matney v. State,* 99 S.W.3d 626, 629 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *McCoy v.*

cannot make such an assumption because, as the majority repeatedly points out, the grand jury approached Judge Lopez with its concerns about election fraud *before* Garza was involved, and notwithstanding its investigation, the grand jury failed to return an indictment on that issue.

The majority concedes that these issues are moot, but in a footnote without any explanation, the majority asserts two exceptions to the mootness doctrine.[5] The majority asserts that the "public interest" exception to mootness applies because the appointment of Garza to investigate voter fraud is "an issue of considerable public importance and the issue is capable of repetition between either the same parties or other members of the public."[6] Additionally, the majority claims that Garza's appointment to investigate and prosecute allegations of voter fraud is "capable of repetition but evading review."[7] I cannot join either holding.

First, I note that the Texas Supreme Court has not yet recognized the "public interest" exception to the mootness doctrine.[8] The Houston Court of Appeals declined to adopt this exception, holding that in the absence of direction from the highest court in our State, it is improper to expand our constitutionally limited jurisdiction.[9] Notably, none of the cases cited by the majority, nor any other Texas case for that matter, has ever applied this exception in a mandamus proceeding. I would refrain from applying this exception at all, and its application is particularly inappropriate in a mandamus proceeding.

The "public interest" exception has been held by this Court to apply when an issue of "considerable public importance" is "capable of repetition between either the same parties or other members of the public, but for some reason evades appellate review."[10] What constitutes a "mat-

---

*State*, 773 S.W.2d 777, 779 (Tex.App.-Corpus Christi 1989, pet. ref'd). It has long been the law that an indictment may not be quashed or set aside because the "person who acted as district attorney was not empowered by law to do so. The indictment was the act of the grand jury." *State v. Gonzales*, 26 Tex. 197, 198, 1862 WL 2833, at *2 (Tex.1862). Furthermore, the January 17 order directed Garza to investigate several concerns that were unrelated to allegations of voter fraud, and the appointment as to these matters is not rendered invalid by a determination that Garza may be disqualified from acting as attorney pro tem for the purpose of investigating possible voter fraud. *See Kubena v. Hatch*, 144 Tex. 627, 193 S.W.2d 175, 177 (1946) ("Contrary to the common law rule that a judgment is considered as an entirety and must be vacated as a whole, it is well settled in this state that a judgment may be void in part and valid in part provided the valid portion is not so dependent on the invalid as to fall with it."). The majority concedes as much by refusing to invalidate the entire January 17 order, even though it finds that the order included civil matters that the grand jury could not properly investigate. *See* majority opinion, Part VI subpart 8.

5. *See* majority opinion note 198.

6. *See id.*

7. *Id.*

8. *See FDIC v. Nueces County*, 886 S.W.2d 766, 767 (Tex.1994).

9. *Houston Chronicle Publ'g Co. v. Thomas*, 196 S.W.3d 396, 400 (Tex.App.-Houston [1st Dist.] 2006, no pet.) ("The Texas Supreme Court has not yet recognized the public interest exception to the mootness doctrine and judicial restraint compels us to wait until that court decides to resolve the split in authority in the intermediate appellate courts.").

10. *See Ngo v. Ngo*, 133 S.W.3d 688, 692 (Tex. App.-Corpus Christi 2003, no pet.); *Nueces County v. Whitley Trucks, Inc.*, 865 S.W.2d 124, 126 (Tex.App.-Corpus Christi 1993, *writ dism'd w.o.j., F.D.I.C. v. Nueces County*, 886 S.W.2d 766 (Tex.1994) (refusing to recognize public interest exception, determining that exception as recognized by court of appeals did not apply, and dismissing case as moot).

ter of significant public importance" is not specifically defined in the case law, and the lack of any definition or discernible boundaries creates the potential for abuse. It brings to mind the wise words of caution written by Henry Home and reiterated by the Texas Supreme Court regarding the boundaries of equity and the need for discernible rules:

> If an equity court's jurisdiction was limited only by its reach, experience demonstrated that the arbitrary exercise of that power was certain to result. And if we endeavored: "To determine every particular case according to what is just, equal, and salutary, taking in all circumstances [it] is undoubtedly the idea of a court of equity in its perfection; and had we angels for judges such would be their method of proceeding without regarding any rules: but men [and women] are liable to prejudice and error, and for that reason, cannot safely be trusted with unlimited powers. Hence the necessity of establishing rules, to preserve uniformity of judgment in matters of equity as well as of common law: the necessity is perhaps greater in the former, because of the variety and intricacy of equitable circumstances. Thus though a particular case may require the interposition of equity to correct a wrong or supply a defect; yet the judge ought not to interpose, unless he can found his decree upon some rule that is equally applicable to all circumstances of the kind. If he be under no limitation, his decrees will appear arbitrary, though substantially just—and, which is worse, will often be arbitrary, and substantially unjust; for such, too frequently, are human proceeding when subjected to no control. General rules, it is true, must often produce decrees that are materially unjust; for no rule can be equally just in its application to a whole class of cases that are far from being the same in every circumstance—but this inconvenience must be tolerated, to avoid a greater, that of making judges arbitrary. A court of equity is a happy invention to remedy the errors of common law: but this remedy must stop some where; for courts cannot be established without end, to be checks one upon another. And hence, it is, that, in the nature of things, there cannot be any other check upon a court of equity but general rules." [11]

Because we should reserve our extraordinary writ power for circumstances where our decision has an effect on the proceedings below,[12] and an amorphous exception to the mootness doctrine would engage this Court in an impermissible extension of our limited mandamus jurisdiction, I would hold that Guerra's issue is now moot.

---

11. *State v. Morales*, 869 S.W.2d.941, 944 (Tex. 1994) (refusing to expand equity jurisdiction) (quoting HENRY HOME, PRINCIPLES OF EQUITY 46 (2d ed. 1767)).

12. *Minton v. Perez*, 841 S.W.2d 854, 855 (Tex. 1992) (dismissing mandamus petition, holding that relator's challenge to order removing him from office after criminal conviction was moot because relator obtained reversal of conviction on appeal); *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex.1992) ("Avoiding interlocutory appellate review of errors that, in the final analysis, will prove to be harmless, is one of the principal reasons that mandamus should be restricted."); *In re State ex rel. Rodriguez*, 196 S.W.3d 454, 459–60 (Tex.App.-El Paso 2006, orig. proceeding) (dismissing as moot mandamus petition seeking relief from denial of motion to strike intervention, where intervening party was severed into separate suit); *Cappadonna Elec. Mgm't v. Cameron County*, 180 S.W.3d 364, 375 (Tex.App.-Corpus Christi 2005, orig. proceeding) ("When there has ceased to be an active controversy, 'the decision of an appellate court would be a mere academic exercise.' ") (quoting *Hanna v. Godwin*, 876 S.W.2d 454, 457 (Tex.App.-El Paso 1994, no writ)).

Second, the majority does not explain why Garza's appointment to investigate and prosecute Guerra, who in this context wears the hat of a criminal defendant and not the hat of a district attorney, is a matter of such importance that the constitutional limitations on our jurisdiction can be discarded. The majority takes great pains to distinguish between Guerra's status as a district attorney, and his claims made in that regard, and his status as an ordinary criminal defendant.[13] Nevertheless, the majority ignores the fact that Guerra wears the hat of an ordinary criminal defendant with regard to his challenges to Garza's qualifications. I fail to see why *this* prosecution is of any greater public interest than any other prosecution.

Third, the majority does not explain that the "public interest" exception overlaps to some extent with the "capable of repetition yet evading review" exception—both ex-

ceptions only apply to issues that are not capable of being reviewed by the normal appellate process.[14] This Court has refused to apply the "public interest" exception to cases where the issue *has been reviewed* on the merits by other courts of appeals; logically, if other courts have reached the issue, it has not escaped review.[15] In fact, this Court was reversed by the Texas Supreme Court when it erroneously applied the "public interest" exception to an issue that had been addressed by numerous appellate decisions.[16] The majority claims that the issues of Garza's conflict of interest and status as a potential witness evades review, as they must to fit within the exceptions to mootness; the majority, however, ignores the numerous appellate decisions that have addressed the merits of these same issues, some of which the majority relies on in reaching their decision.[17] Thus, it is clear

13. *See* majority opinion Part IV.

14. *Ngo,* 133 S.W.3d at 693.

15. *Id.*

16. *See Nueces County,* 886 S.W.2d at 767.

17. *State ex rel. Hill v. Pirtle,* 887 S.W.2d 921, 943 (Tex.Crim.App.1994) (Baird, J., dissenting) (noting that a defendant's conviction could be reversed on appeal if prosecutor's conduct rose to a due process violation); *State ex rel. Eidson v. Edwards,* 793 S.W.2d 1, 6 (Tex.Crim.App.1990) ("Perhaps even more importantly, as mentioned above, [a prosecutor's] violation of the rules will subject his cases to reversal on appeal when his unprofessional conduct results in a denial of due process to the defendant."). Many courts have reviewed on appeal a defendant's claim that the prosecutor had an impermissible conflict of interest. *See Munguia v. State,* 603 S.W.2d 876, 878–79 (Tex.Crim.App.1980) (reviewing on appeal defendant's complaint that county attorney had impermissible conflict of interest); *Reed v. State,* 503 S.W.2d 775, 776 (Tex.Crim.App.1974) (reviewing on appeal defendant's complaint that *special prosecutor* had impermissible conflict of interest); *Don-*

*ald v. State,* 453 S.W.2d 825, 827 (Tex.Crim. App.1969) (reviewing on appeal claim that prosecutor had improper financial interest in prosecution); *Canady v. State,* 100 S.W.3d 28, 31–32 (Tex.App.-Waco 2002, no pet.) (reviewing alleged conflict of interest on appeal); *Hanley v. State,* 921 S.W.2d 904, 909–10 (Tex. App.-Waco 1996, pet. ref'd) (reviewing on appeal allegation of prosecutor's bias and prejudice as a due process violation); *Offermann v. State,* 742 S.W.2d 875, 876 (Tex.App.-San Antonio 1987, no writ) (reviewing on appeal defendant's claim that prosecutor was disqualified because he harbored a personal grudge). Furthermore, courts have reviewed on appeal a defendant's complaint that the prosecutor improperly testified at the defendant's trial. *See Ramon v. State,* 159 S.W.3d 927, 930–32 (Tex.Crim.App.2004) (reviewing on appeal trial court's refusal to grant mistrial after allowing prosecutor to testify, and affirming conviction because testimony was not on a central issue in the case, trial court instructed jury to disregard testimony, and other evidence of guilt was strong); *House v. State,* 947 S.W.2d 251, 252–53 (Tex.Crim.App. 1997) (reviewing on appeal defendant's claim that trial court impermissibly allowed two prosecutors to testify); *Brown v. State,* 921

that neither the purported "public interest" nor the recognized "capable of repetition but evading review" exceptions apply.

Nevertheless, the majority claims that the duration of a pro tem appointment is short, rendering conflicts of interest unreviewable. That simply is not true. A pro tem appointment can last as long as any other prosecution, and pro tem and special prosecutor appointments are frequently reviewed on appeal.[18] Accordingly, I disagree that this case meets the criteria of either the "public interest" or "capable of repetition but evading review" exceptions.

Finally, although it is possible that a second grand jury could investigate Guerra for election fraud violations,[19] there is no evidence to suggest that such will be the case. Moreover, even if that were to happen—a truly speculative proposition— and a grand jury indicted Guerra on voter fraud allegations, it is even more speculative to assume that Garza would again be appointed as attorney pro tem. In fact, it is highly unlikely that Judge Lopez (or any other judge for that matter) would appoint

Garza, given the upheaval this case has generated.[20] And in any event, Guerra could obtain review through the ordinary process applicable to criminal defendants.[21] He could file a motion to disqualify Garza and present evidence, if any, that would support disqualification, which could be reviewed on appeal. If, however, a second grand jury no-billed Guerra again, he would, *again*, have nothing to complain about.

## B. Hat of a criminal defendant—Guerra has an adequate remedy by appeal.

As noted above, Guerra's argument that Garza is disqualified to serve as attorney pro tem can only be raised when Guerra wears the hat of a criminal defendant. Like any other criminal defendant (if he ever becomes a defendant), Guerra can address this matter at the pretrial stage of his prosecution. Nevertheless, the majority provides no reason for their departure from the lengthy discussion in Part IV about the necessity for an inadequate remedy by appeal.

S.W.2d 227, 229–30 (Tex.Crim.App.1996) (same).

18. *See Reed,* 503 S.W.2d at 776 (reviewing on appeal defendant's complaint that special prosecutor had impermissible conflict of interest); *Delapaz v. State,* 228 S.W.3d 183, 195–97 & n. 20 (Tex.App.-Dallas 2007, no pet. h.); *Mai v. State,* 189 S.W.3d 316, 318–20 (Tex.App.-Fort Worth 2006, pet. ref'd); *Coleman v. State,* No. 07–05–0042–CR, 2006 WL 3408407, at *——–——, 2006 Tex.App. LEXIS 10155, at *2–4 (Tex.App.-Amarillo Nov. 27, 2006, pet. granted); *Shea v. State,* 167 S.W.3d 98, 101–02 (Tex.App.-Waco 2005, pet. ref'd); *Modica v. State,* 151 S.W.3d 716, 720–21 (Tex. App.-Beaumont 2004, pet. ref'd); *Marbut v. State,* 76 S.W.3d 742, 748–50 (Tex.App.-Waco 2002, pet. ref'd); *Scarborough v. State,* 54 S.W.3d 419, 420–25 (Tex.App.-Waco 2001, pet. ref'd) (reviewing on appeal whether attorney pro tem had impermissible conflict of interest); *Stephens v. State,* 978 S.W.2d 728, 730–31(Tex.App.-Austin 1998, pet. ref'd);

*Rogers v. State,* 956 S.W.2d 624, 625–27 (Tex. App.-Texarkana 1997, pet. ref'd); *Gaitan v. State,* 905 S.W.2d 703, 707–08 (Tex.App.-Houston [14th Dist.] 1995, pet. ref'd); *Mejia v. State,* 807 S.W.2d 354, 355 (Tex.App.-Houston [1st Dist.] 1991, pet. ref'd); *Evans v. State,* 769 S.W.2d 319, 322–23 (Tex.App.-Dallas 1989, no pet.).

19. *Shumake v. State,* 502 S.W.2d 758, 760 (Tex.Crim.App.1973) (holding that former grand jury proceeding resulting in a no-bill does not implicate double jeopardy or collateral estoppel).

20. In fact, Garza stated that there was "no way" he would accept another appointment to prosecute Guerra.

21. *See* majority opinion Part IV (stressing that Guerra has an adequate remedy by appeal when he wears the hat of a criminal defendant by turning to the remedies available through the criminal justice system).

Wearing the district attorney hat, for which the majority has determined an adequate remedy does not exist, Guerra would not have standing to raise these issues. For instance, if a third party was at risk of being prosecuted by Garza, and Garza was poised to serve as a witness in the course of prosecution, Guerra would have no standing to raise a complaint on behalf of the third party. Likewise, I find no reason why Guerra has standing to raise a complaint on his own behalf at this time merely because he happens to also be the elected district attorney.

Accordingly, I would hold that Guerra has an adequate remedy below, and he must pursue that course before seeking this Court's intervention. Nevertheless, I would find that he is not entitled to relief for the following reasons.

**C. Garza as a potential witness—the majority creates a new exception to *Eidson* without any explanation by granting relief without requiring proof of a due process violation.**

The majority recognizes that a prosecutor may be disqualified by a trial court only in certain, limited circumstances.[22] Specifically, the majority recognizes the general rule that "[i]f there is a conflict of interests on the part of the district attorney or his assistants . . . the responsibility of recusal lies with them, not with the trial court judge."[23] The majority then sets out the two recognized exceptions to this rule, which are (1) when the prosecutor is disqualified to act based on a conflict of interest that rises to the level of a due process violation, and (2) when the prose-

cutor has, before his election, been employed adversely.[24] I agree with the majority's conclusion in Part VI that a further exception should be recognized in this case, where the district attorney is the subject of a grand jury's investigation. I agree that Guerra cannot properly participate in an investigation into his own alleged criminal conduct. Furthermore, allowing Guerra alone to decide whether he is disqualified would, as Judge Teague put it, leave "the wolf to guard the henhouse, in order to protect the chickens from the wolf."[25]

Nevertheless, I disagree with the majority's position to grant relief on the ground that Garza *may* testify against Guerra because I believe that the majority has created yet another exception to *Eidson*—one which is not required. The disconnect in the majority's grant of relief and the rest of its opinion, I believe, arises in the discussion in Part VI subpart 5, where the opinion distinguishes *Eidson* on the grounds that the *Eidson* plurality had the benefit of state and federal constitutional protections—"safeguards that are not as readily available in this case."[26] For this reason, along with others, the majority creates an exception and allows the trial court to disqualify a prosecutor under the circumstances of this case.

The majority, however, does not explain why Guerra's status as a defendant prosecuted by someone who *might* be called to testify in the case against him makes him any different than any other criminal de-

---

22. *See* majority opinion Part VI.4.

23. *See id.* & note 72 (citing *Eidson,* 793 S.W.2d at 6).

24. *See id.* Part VI.4 and notes 75–78 (citing *Pirtle,* 887 S.W.2d at 927 and Tex.Code Crim. Proc. Ann. art. 2.01 (Vernon 2005)).

25. *Eidson,* 793 S.W.2d at 12 (Teague, J., dissenting).

26. *See* majority opinion Part VI.5.

fendant subject to the same possibility, nor does the majority explain why Guerra would not benefit from state and constitutional protections he could raise in the trial court and on appeal. Courts have recognized that due process protects a defendant's right to a fair trial, which may be jeopardized if a prosecutor testifies as a material witness on an element of the crime charged and later argues his own credibility to the jury.[27] Yet the majority inexplicably does not require Guerra to prove a due process violation with regard to Garza's potential testimony, which admittedly, Guerra did not even attempt to prove.[28] The majority recognizes the general rule that a trial court may disqualify a prosecutor only if the allegations rise to a due process violation but does not explain why Guerra is exempt from this rule. Because the majority purports to grant relief based on Garza's potential testimony, but does not require Guerra to demonstrate that this possibility rises to the level of a due process violation, I dissent.

---

**27.** *Brown*, 921 S.W.2d at 231 (Keller, J., concurring).

**28.** Justice Rose Vela recently issued an opinion placing the burden squarely on a defendant to prove that a district attorney is disqualified in a case where a conflict of interest was alleged. *See Cavazos v. State*, No. 13–05–00482–CR, 2007 WL 765431, at *4, 2007 Tex. App. LEXIS 2049, at *12 (Tex.App.-Corpus Christi Mar. 15, 2007, no pet.) (mem.op.) (not designated for publication). I would do the same here and hold that Guerra failed to meet his burden.

**29.** *Gonzalez v. State*, 117 S.W.3d 831, 838 (Tex.Crim.App.2003).

**30.** *See id.* at 842; *see also Ramon*, 159 S.W.3d at 931–32. In fact, rule 3.08 of the Texas Disciplinary Rules of Professional Conduct contemplates that a lawyer should terminate representation if he may be a witness to an "essential fact," but the rule's exceptions provide that an attorney *is not* required to discontinue representation if "(1) the testimony

### D. The mere possibility of Garza testifying does not automatically warrant disqualification or constitute error, and no evidence supports the majority's conclusion.

The court of criminal appeals has held that a party seeking disqualification "cannot invite the necessary actual prejudice by unnecessarily calling the opposing counsel as a witness."[29] Furthermore, the court has seemingly distinguished between situations in which counsel's testimony is critical to the issue of innocence and situations where the testimony is "merely tangential to the case or to defendant's guilt," finding that only the former scenario requires disqualification.[30] Therefore, the mere fact that Guerra may elect to call Garza as a witness, or the fact that Garza may be called to testify on tangential matters (e.g., to simply testify that he was a candidate in the election at issue), does not create a basis for affording Guerra relief.

Guerra has not presented this Court with any explanation for Garza's allegedly "required" testimony, nor can I fathom any.[31] In *Gonzalez v. State*, the court of

---

relates to an uncontested issue;" or "(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony." TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a) (1989), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1988) (TEX. STATE BAR R. art. X, § 9).

**31.** Specifically, it is hard to imagine that Garza would have stood by idly, with knowledge of election fraud, and allowed Guerra to win the election without a contest. Garza testified before this Court during the contempt hearing that he did not challenge the election for precisely this reason—he had no grounds to suspect election fraud. Obviously, the grand jury agreed that there was no evidence, which most would find telling. *Compare United State v. Navarro–Vargas*, 408 F.3d 1184, 1195 (9th Cir.2005) (discussing public perception that grand jury is a rubber stamp for prosecutors and noting sarcasm by prominent judge that a grand jury would "indict a ham sandwich"), *with United State v.*

criminal appeals stated that when the record supports a court's conclusion that counsel will be called to testify, "neither the trial court nor the court of appeals is under any obligation to explain why it would be necessary for the State to call counsel as a witness or what essential fact defense counsel's testimony would establish." [32] While a court can speculate on these matters, this speculation "cannot be unsupported or dubious." [33] The majority opinion recognizes as much.

However, the majority ignores the record in this case, which does not support the conclusion that Garza would be called to testify. The *only* evidence before this Court that addresses the possibility of Garza being called as a witness in Guerra's prosecution comes from testimony Garza provided at the show cause hearing before this Court. In his testimony, Garza negates the idea that he would have to serve as a witness:

> Q: [Guerra's counsel]: And when you were appointed by Judge Lopez and you found out to be one of the concerns, and you knew that you were in the middle of that election where my client was alleged to have committed election fraud, why isn't it that you didn't tell the judge, "Look, I'm a witness here. I was involved in this election. If there was any election fraud, I might know about it and I might have to be the person that gets up on that witness stand and testify about that"?
>
> ....
>
> A: [Garza]: First of all, [counsel], when the judge pulled me out and when the judge had an officer go and pull me out of the office of Juan Angel Guerra, whom I was working a plea bargain

with, to go into the grand jury and introduce me and if I would accept the appointment, I did not know that. That had not been mentioned. That had been made part of the record but I was not privy to that record. I had no way of knowing, okay?

> Secondly, when I drafted the order, he [sic] noticed the order was signed on the 17th. The meeting and the acceptance of the appointment was on the 11th. I had already said I would. Judge Lopez had already introduced me to the grand jury.
>
> That concern never occurred to me that involved me because I never brought any issues of fraud against Juan Angel Guerra in any of the elections.
>
> Q: You knew?
>
> A: No, sir. Don't tell me what I say [sic]. I never brought any issues of voter fraud against Juan Angel Guerra in any of the elections. I had no way to say I was a witness. Of course I was not a witness.

There is no evidence before us indicating that Garza has any knowledge relating to whether Guerra committed an illegal act in the March 2004 election, nor is there evidence indicating that Garza anticipates being a witness. His testimony suggests the contrary, that he has no knowledge of any material, disputed facts regarding the alleged election fraud. In fact, because Guerra was not indicted for election fraud, it is *impossible* that Garza will testify against Guerra. Without any evidence to support its conclusion, this Court is burdened by an obligation it cannot fulfill— i.e., to explain either why it would be necessary for the State or Guerra to call

---

*Williams,* 504 U.S. 36, 47, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (defending grand jury's position as a buffer between the government and the people).

**32.** *Gonzalez,* 117 S.W.3d at 843.

**33.** *Id.* at 844.

Garza as a witness or what essential fact his testimony would establish. This the majority does not do.

I further note that, even if Garza were to somehow testify in the non-existent prosecution for election fraud, reversible error would not result based solely on Garza's potential violation of a disciplinary rule of professional conduct. In *Brown v. State*, the court of criminal appeals found that the court of appeals erred in reversing a defendant's conviction.[34] The Fort Worth Court of Appeals had reversed the conviction after finding that the trial court erred in permitting the prosecutor to continue prosecuting the case after she testified as a witness in the case.[35] The court of criminal appeals, in a plurality opinion, noted "that Section 2.5(c), Texas Prosecutor Standards and Guidelines, provides that a prosecutor shall not be disqualified from testifying as a witness 'when the need of the testimony arises during a proceeding.' "[36] The plurality contended that both the defendant's brief and the court of appeals relied *solely* on a disciplinary rule violation as a basis for reversing the conviction.[37] The plurality then held:

> [T]he applicable rule here is that violation of a disciplinary rule does not require a reversal unless a defendant can show the disciplinary rule violation affected his substantial rights or deprived him of a fair trial. The Court of Appeals erred to rely solely on a disciplinary rule violation to reverse the conviction. On this record, appellant's remedy

is to file a complaint with the State Bar.[38]

This holding was later reaffirmed in *House v. State*.[39] In *House*, the appellant, who had been convicted of voluntary manslaughter, argued that his conviction should be reversed because the trial court erred in allowing two assistant district attorneys to testify, which was allegedly prohibited by the Texas Disciplinary Rules of Professional Conduct.[40] The court of criminal appeals held that it was "unnecessary in cases like this to decide whether the State violated [a rule of professional conduct]. This is because if a defendant cannot show actual prejudice from an alleged disciplinary rule violation by the State, then he will not be entitled to relief on appeal."[41] In the instant case, Guerra has presented this Court with no evidence or argument to indicate that Garza acting as a witness would affect Guerra's substantial rights or deprive Guerra of a fair trial.

With respect to the resolution of factual issues, such as the factual issue being dealt with here, Guerra must establish that the trial court could have reasonably reached only one decision.[42] Even if this Court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable.[43] On this record, particularly given that Guerra did not ever raise this issue with the trial court, I cannot say that Judge Lopez abused her discretion. Moreover, Guerra has not been indicted for election fraud—there is no possibility

34. *Brown*, 921 S.W.2d at 230.

35. *Id.* at 229.

36. *Id.* at 229 n. 2.

37. *Id.* at 229–30.

38. *Id.* at 230 (citations omitted).

39. *House v. State*, 947 S.W.2d 251, 253 (Tex. Crim.App.1997).

40. *Id.* at 252.

41. *Id.* at 253.

42. *Walker*, 827 S.W.2d at 839.

43. *Id.*

Garza will testify against him. Even assuming that the prosecution was ongoing and that the issue had been properly raised below, because Garza's testimony is only a hypothetical possibility, the trial court could have reasonably concluded that this was a matter that could be addressed at the trial of the case [44] and, if necessary, on appeal.[45] Accordingly, I would deny relief.

### E. GARZA'S "INTEREST" IN THE PROSECUTION.

The majority takes issue with Garza's alleged history with Guerra, manufacturing what they deem an intolerable conflict of interest and ultimately finding that this alleged conflict constitutes a due process violation. The majority cites three reasons for Garza's lack of independence: (1) Garza is Guerra's long-time political opponent and was a candidate in the 2004 election, (2) Garza harbors animosity against Guerra that resulted in a physical altercation, (3) Garza has a personal and financial interest in the outcome of the proceeding. Although the majority recognizes that "Texas case law clearly shows that a mere *potential or perceived* conflict of interest is not sufficient to warrant disqualification," [46] they determine that relief should be granted because "there is a *potential*

conflict between Garza's direct personal interest in the results of the criminal investigation of these charges and Garza's duty to see that justice is done." [47] In finding this alleged "conflict," the majority strains to the point of absurdity, in the absence of any law or an evidentiary record to support its holding.

First, as stated earlier, the majority completely ignores the fact that the grand jury did not indict Guerra for election fraud. Thus, I fail to grasp how Garza's alleged "interest" can affect the underlying proceedings. I have already addressed this issue in depth and will not repeat it here.

Second, the "conflicts" on which the majority relies are not supported by the record. Although the majority points out the fact that Guerra and Garza were both candidates in the 2004 election, the majority is careful to note that mere political ambitions or a political axe to grind is not enough to warrant a disqualification.[48] Although it is not entirely clear, I do not construe the majority's opinion as granting relief on this fact alone—which would certainly be an insufficient basis for relief in this case.

---

44. The principal concern with a prosecutor testifying as a witness is that the trier of fact may be confused by the prosecutor's dual roles. TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a). The problem may be cured at trial by having another prosecutor actually try the case, if the need for the prosecutor's testimony cannot be avoided. *See In re Bahn*, 13 S.W.3d 865, 873 (Tex.App.-Fort Worth 2000, orig. proceeding) (holding that trial court abused its discretion in disqualifying attorney from assisting in pretrial matters because the rationale of Rule 3.08 does not apply when the lawyer is merely performing out-of-court functions).

45. *See Eidson*, 793 S.W.2d at 7 (stating that violation of due process caused by prosecutor's failure to recuse requires reversal on appeal).

46. *See Hanley*, 921 S.W.2d at 909–10 (holding that the defendant could not disqualify the district attorney on the grounds that the prosecutor had a "prejudice" and "predisposition" against him without proving that his allegations rose to the level of a due process violation); *Offermann*, 742 S.W.2d at 876 (holding that defendant could not disqualify the district attorney on the grounds that the prosecutor harbored a "personal grudge" against him because defendant failed to establish any harm as a result of the alleged "grudge").

47. *See* majority opinion Part IX.2.c.

48. *See* majority opinion notes 181–82 and accompanying text.

The "evidence" in the record of an altercation between Guerra and Garza is a complaint signed by Eutimio Gutierrez, acknowledged by Guerra himself, in support of an information that Guerra filed attempting to prosecute Garza.[49] This is merely an accusation by Gutierrez and Guerra—it is not a finding or proof that the altercation actually occurred.[50] The fact that a person has been accused of a crime does not give rise to an inference that the person is guilty.[51] Yet that is what the majority apparently infers from Guerra's accusation against Garza.

In fact, the accusation by Gutierrez is not even in a form that this Court can recognize as competent evidence. "In mandamus actions greater certainty of the pleadings and the facts to be established by modes appropriate in appellate courts are required."[52] The reason for this requirement, as this Court has stated, is that courts of appeals are not equipped to find facts in the first instance—we must rely on the truth of the record as it is presented to the Court.[53] Thus, our rules require that the facts in a mandamus petition be supported by an affidavit made on personal knowledge, a certified transcription of testimony in the underlying proceeding, or a certified or sworn copy of a document filed in the underlying proceeding.[54] Gutierrez's statement meets none of these basic requirements. It is not based on Gutierrez's personal knowledge—the statement says that Gutierrez "has good reason to believe and does believe and charge" that Garza assaulted Guerra, which is insufficient.[55] Moreover, the document is not a certified copy and is not even sworn as a true and correct copy by Guerra.[56] At most, the majority can only speculate as to whether an altercation ever occurred, and this speculation is certainly insufficient to support a finding of a due process violation.[57]

Additionally, on this record, I fail to see what personal or financial interest Garza has in the outcome of the proceeding. Assuming that Guerra was convicted and removed from office, Garza would not neces-

---

**49.** It is almost comical that Guerra attempted to prosecute Garza for an act with respect to which Guerra was the alleged victim and complainant, and yet now, Guerra is attempting to disqualify Garza because he is a potential witness.

**50.** Tex. Const. art. V, § 12 ("An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense."); Tex. Code Crim. Proc. Ann. art. 21.20 (Vernon 1989); *id.* art. 38.03 ("The fact that [an accused] has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial."); *Ex Parte Garcia*, 547 S.W.2d 271, 271–75 (Tex.Crim.App.1977) (holding that complaint and information were insufficient to justify continued detention of accused, as the complaint and information did not constitute evidence of guilt).

**51.** Tex.Code Crim. Proc. Ann. art. 38.03 (Vernon 2006).

**52.** *Wright v. Valderas*, 575 S.W.2d 405, 406 (Tex.Civ.App.-Fort Worth 1978, orig. proceeding).

**53.** *Chapa v. Whittle*, 536 S.W.2d 681, 683 (Tex.App.-Corpus Christi 1976, orig. proceeding); *Elliott v. Hamilton*, 512 S.W.2d 824, 825 (Tex.Civ.App.-Corpus Christi 1974, orig. proceeding).

**54.** Tex R.App P. 52.3, 52.7(a); *see Johnson v. Hughes*, 663 S.W.2d 11, 12 (Tex.App.-Houston [1st Dist.] 1983, orig. proceeding); *Wright*, 575 S.W.2d at 406.

**55.** *Cantrell v. Carlson*, 313 S.W.2d 624, 626 (Tex.Civ.App.-Dallas 1958, orig. proceeding) (verification of mandamus petition based on belief is insufficient).

**56.** Tex.R.App. P. 52.6.

**57.** *Hanley*, 921 S.W.2d at 909–10.

sarily become the sitting district attorney. The Texas Constitution provides that "[a]ll vacancies in State or district offices, except members of the Legislature, shall be filled unless otherwise provided by law by the appointment of the Governor." [58] Garza would have to apply, just as any other citizen interested in higher public office, to receive the appointment from the Governor. As the majority recognized, "a prosecutor's political ambitions alone are not enough to support a finding that a prosecutor is not sufficiently disinterested." [59]

Moreover, at the show cause hearing, Garza testified that he currently lives in Cameron County and that he does not own property in Willacy County. Therefore, the evidence before this Court indicates that it is impossible for Garza to even be considered as a nominee to replace Guerra in the event of his removal; this is because the law precludes Garza from assuming the office of Willacy County District Attorney when he does not live in that county.[60]

Finally, the majority makes reference to a possible "financial stake" in the outcome of the proceedings, without explicitly holding that Garza has such a financial interest. The majority cites two cases in which a political candidate recovered damages for campaign finance disclosure law violations.[61] These cases rely on Texas Election Code section 253.131, which provides a civil action for damages against a campaign contributor or candidate who makes an expenditure of money in violation of the Election Code.[62] But the Election Code provides for criminal sanctions for all sorts of conduct unrelated to financial expenditures, and these criminal violations do not give rise to civil liability to an opposing candidate.[63] The truth of the matter is

---

**58.** TEX. CONST. art. IV, § 12.

**59.** *See* majority opinion Part IX.2.c and note 182.

**60.** TEX. CONST. art. XVI, § 14; TEX. ELEC.CODE ANN. § 141.001(a)(5)(A) (Vernon 2003); *see State v. Fischer*, 769 S.W.2d 619, 624 (Tex. App.-Corpus Christi 1989, no writ) (holding that appellee was ineligible to serve as Willacy County Attorney because he failed to continuously reside in Willacy County for six months immediately preceding the filing deadline for a place on the primary election ballot).

**61.** *See* majority opinion note 188 and accompanying text (citing *Osterberg v. Peca*, 12 S.W.3d 31, 36 (Tex.2000) and *Ragsdale v. Progressive Voters League*, 790 S.W.2d 77, 84 (Tex.App.-Dallas), *aff'd in part & rev'd in part on other grounds*, 801 S.W.2d 880 (Tex.1990)).

**62.** TEX. ELEC.CODE ANN. § 253.131 (Vernon 2003). Section 254.231 also provides for civil damages when a candidate or campaign treasurer fails to report a campaign contribution or campaign expenditure. *Id.* § 254.231 (Vernon 2003).

**63.** *See, e.g.,* TEX. ELEC.CODE ANN. §§ 2.054 (coercion against candidacy), 13.007 (false statement on application), 15.085 (unlawful use of information on suspense lists), 18.009 (unlawful use of information on registration list), 18.012 (unlawful computer service contracts), 18.067 (unlawful use of master file information), 33.061 (unlawful obstruction of watchers), 44.033 (unlawful consideration for use of public building), 51.010 (failure to deliver or distribute supplies), 51.011 (obstructing delivery of supplies), 52.004 (failure to place candidate's name on ballot), 52.063 (unlawful preparation of ballots), 61.001 (unlawful presence of candidate at polling place), 61.003 (unlawful electioneering and loitering near polling place), 61.004 (unlawful operation of sound amplification device or sound truck), 61.006 (unlawfully divulging vote), 61.008 (unlawfully influencing voter), 61.010 (unlawfully wearing name tag or badge in polling place), 62.013 (unlawful posting of signs), 62.012 (unlawfully accepting or refusing to accept voter), 64.010 (unlawfully permitting or preventing deposit of ballot), 64.011 (unlawfully depositing ballot), 64.012 (illegal voting), 64.036 (unlawful assistance), 84.003 (early voting violations), 84.004 (same), 84.041 (false information on early voting application), 85.036 (electioneering), 86.051 (carrier envelope action by person other than voter), 86.006 (unlawful method of

that this Court has no idea what allegations of voter or election fraud were brought before the grand jury. In short, the majority stretches to create an "interest" in the outcome of the prosecution that is not supported by the record and uses this purported interest as support for its determination to afford Guerra relief.

### III. CONCLUSION

For all the foregoing reasons, I respectfully dissent. I would deny all requested relief and assess all costs of this proceeding against Guerra.

returning marked ballot), 86.010 (assisting voter), 276.001 (retaliation against voter), 276.003 (unlawful removal from ballot box), 276.004 (unlawfully prohibiting employee from voting), 276.010 (unlawful buying or selling of balloting materials), 501.029 (misrepresentation of petition) (Vernon 2003 & Supp.2006).